45382. STATE FARM FIRE & CASUALTY COMPANY v. MORGAN.
(368 SE2d 509)

CLARKE, Presiding Justice.

We must decide whether voluntary intoxication may render a person incapable of forming an intent or expectation of injuring another so as to place his act outside an exclusion in a homeowner's insurance policy. The Court of Appeals held intent and expectation to be a question of fact and approved its submission to a jury. *State Farm &c. Co. v. Morgan*, 185 Ga. App. 377 (364 SE2d 62) (1987). We agree.

In reaching this conclusion, the Court of Appeals relied heavily upon its earlier holding in *Thrift-Mart, Inc. v. Commercial Union &c. Cos.*, 154 Ga. App. 344 (268 SE2d 397) (1980). In that case the court submitted the issue to the jury but the jury decided in favor of the insurance company. The Court of Appeals overruled *Gaynor v. Travelers Ins. Co.*, 12 Ga. App. 601 (77 SE 1072) (1913).

This case began as a declaratory judgment action by State Farm and asked for an interpretation of the insurance policy which excludes coverage for injuries expected or intended by the insured. It is important to remember that the legal issues here rise from contract law and not tort or criminal law. Consequently, policy considerations differ from those in tort and criminal cases. Public policy does not prevent a party from assuming by contract duties more burdensome than those imposed by law because of a party's right to refuse the contract. The fact that the insurer drafts the policy adds validity to this statement.

The question of intent or expectation here uniquely fits the pattern of those issues of material fact which are not appropriate issues for summary judgment but are decided by the trier of fact. OCGA § 9-11-56 (c). Even in criminal cases the question of the ability to form intent because of voluntary intoxication can be a jury question. *Blankenship v. State*, 247 Ga. 590 (277 SE2d 505) (1981); *Ely v. State*, 159 Ga. App. 693 (285 SE2d 66) (1981).

The words of the contract express a plain and understandable meaning. We decline to overprint those words with limitations which they fail to express and by doing so deprive the jury of its right to decide facts. If the company desires to broaden the exclusion, it may do so. But this task falls to the policy drafter and not to the courts. The policy here deals simply with presence of intent or expectation

and not with factors contributing to or subtracting from intent or expectation.

*Judgment affirmed. All the Justices concur, except Marshall, C. J., Weltner and Bell, JJ., who dissent.*

WELTNER, Justice, dissenting.

I respectfully dissent.

The opinion of the Court of Appeals recites that the insured, C. W. Belt, "was a chronically heavy drinker who, apparently without provocation, shot and killed Kevin [his son] and Susan Belt [his daughter-in-law] and then killed himself." *State Farm &c. Co. v. Morgan*, 185 Ga. App. 377 (364 SE2d 62) (1987).

The brief filed on behalf of the surviving child contains the following statement of fact:

> On March 23, 1983, Kevin Ward Belt, Susan Belt and their five-year-old son, Gregory Belt, were temporarily residing with C. W. Belt and his wife, Ruby Belt, in their homeplace located on Camp Highland Road in Smyrna, Georgia. On said date as C. W. Belt walked from inside his house he confronted his daughter-in-law and his grandson, Gregory Belt. Susan and Gregory were sitting in her automobile which was in the Belt driveway. Susan was in the driver's seat and Gregory was in the front passenger's seat. Without apparently saying a word, C. W. Belt shot Susan Marie Belt once, killing her. Immediately Kevin Ward Belt came out of the house and C. W. Belt shot Kevin Ward Belt once, killing him. C. W. Belt turned and placed the gun to his own head and killed himself with one shot. The grandchild, Kevin Gregory Belt, being frightened, jumped out of the car and ran through the woods seeking safety from the rampage and carnage that was occurring.

While the record establishes that C. W. Belt was intoxicated at the time of the killings, it provides no clarity on what took place between the parties immediately before the killings. It is clear, however, that Belt did not harm or attempt to harm his five-year-old grandson. Had he wished, he easily could have killed him immediately after killing his daughter-in-law.

Manifestly, one who shoots and kills his son and daughter-in-law without apparent provocation, spares the life of a young grandson, and then kills himself has inflicted "bodily injury. . .which is expected or intended."[1] And just as Belt intended *not* to harm or kill

---

[1] The policy of insurance excluded coverage for "bodily injury or property damage which

his grandson, the only reasonable interpretation of his conduct is that he intended to kill his son and his daughter-in-law. Any other holding falls within the realm of conjecture, and would license a jury to base its verdict upon mere surmise.

These factual elements being without dispute, the two homicides committed by the insured, as a matter of law, should be excluded from coverage under the policy.

I am authorized to state that Chief Justice Marshall and Justice Bell join in this dissent.

DECIDED JUNE 3, 1988.

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Lynn M. Roberson,* for appellant.

*Roy E. Barnes, Mike Treadaway, Robert E. Flournoy III,* for appellee.

---

is expected or intended by the insured."