### 77019. STATE AUTOMOBILE MUTUAL INSURANCE COMPANY v. GROSS et al.
(373 SE2d 789)

BANKE, Presiding Judge.

Jessie Pope Salter shot and killed his next door neighbor, Alan Gross, with a shotgun, believing that his wife and Gross were having an affair. Gross's mother thereupon instituted a wrongful death action against Salter, prompting Salter's homeowner's insurance carrier, the appellant herein, to seek a judicial declaration that it had no liability in the matter, due to a policy exclusion pertaining to "bodily injury or property damage . . . which is expected or intended by the insured." The case is before us on interlocutory appeal from the denial of the insurer's motion for summary judgment in the declaratory judgment action.

There is no question that Salter intended for Gross to die as a result of the shooting, for during his deposition he testified as follows: "Q. Did you shoot it at him or shoot near him? A. I shot right straight at his chest. Q. Did you mean to hit him? A. I meant to kill him. Q. You intended to kill him? A. Uh-huh. Q. You expected that he would die from that shotgun blast? A. I knew he would. Q. Did you shoot him just once? A. I shot him and about the time he hit the ground I shot him again. Q. Why did you shoot him again? A. I wanted to make sure he was dead."

Notwithstanding this testimony, Salter and Mrs. Gross contend that fact issues exist with respect to the applicability of the policy exclusion in question, due to the existence of psychiatric opinion testimony that Salter acted out of a delusional compulsion and was unable to distinguish between right and wrong at the time of the killing. *Held*:

In *Continental Cas. Co. v. Parker*, 167 Ga. App. 859, 861 (307 SE2d 744) (1983), this court held (1) that "it is clearly error to give an exculpatory insanity or delusional compulsion charge as a defense to a

civil action for assault or battery seeking compensatory damages," and (2) that "[i]f the defense cannot be used to determine [an insured's] ultimate liability [for such damages], it certainly should not be used in determining his insurer's coverage. . . ." Subsequently, however, in *State Farm Fire & Cas. Co. v. Morgan*, 185 Ga. App. 377, 380 (364 SE2d 62) (1987), this court interpreted *Parker*, supra, as having held that "insanity *is* a defense to an intentional tort."

At issue in *Morgan* was whether voluntary intoxication could destroy a person's capacity to intend or expect the consequences of his acts within the contemplation of a policy exclusion such as the one at issue in the present case. We held that it could, and that holding was subsequently affirmed by the Supreme Court in *State Farm Fire & Cas. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988). In the case before us, of course, the appellees do not contend that the insured's capacity to intend the consequences of his actions was destroyed by intoxication but by insanity, as established by psychiatric opinion testimony that he was unable to distinguish between right and wrong at the time of the shooting (see OCGA § 16-3-2) and was suffering from a delusional compulsion which overmastered his will to resist committing the crime. See OCGA § 16-3-3.

In order for a delusional compulsion to constitute a defense to a criminal charge, it must be as to a fact which, if true, would justify the act. See *Brown v. State*, 228 Ga. 215, 217-218 (184 SE2d 655) (1971); *McMachren v. State*, 187 Ga. App. 793 (371 SE2d 445) (1988). The delusion from which Salter was purportedly suffering at the time he shot the decedent—i.e., that the decedent was having an affair with his wife—obviously was not as to a fact which, if true, would have justified the killing. See *Burger v. State*, 238 Ga. 171 (1) (231 SE2d 769) (1977). Nor, just as obviously, would such a delusion have deprived Salter of the capacity to intend the consequences of the shooting.

With respect to Salter's purported inability to distinguish between right and wrong at the time of the shooting, it is similarly apparent, under the undisputed facts of this case, that such inability had no effect on his capacity to intend the consequences of his actions. Salter freely admitted that he shot the decedent for the specific purpose of killing him, and the record reveals without dispute that at the time of the shooting he was leading a relatively normal day-to-day life, which included holding a job, maintaining a checking account, keeping his automobiles in working order, paying bills, and raising three children. Under such circumstances, there is no basis whatever for a conclusion that his ability to intend the consequences of the shooting was undermined by his purported inability to appreciate the rightness or wrongness of his conduct. Accord *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App. 811, 813 (324 SE2d 510) (1984) (holding that evi-

dence establishing lack of criminal intent "does not necessarily demonstrate, in a civil case, that the act is not intentional"). For these reasons, we hold that the trial court erred in denying the appellant insurer's motion for summary judgment in the present action.

*Judgment reversed. Birdsong, C. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

In *State Farm Fire &c. Co. v. Morgan*, 185 Ga. App. 377 (364 SE2d 62) (1987), I concurred in the judgment only, partially because I did not wholly agree with the statement that "the rule is that insanity *is* a defense to an intentional tort." Id. at 380. Insanity *may* be a defense. It depends on whether the insanity affected the person's intent-forming capacity on the occasion in question. If there is evidence that the insanity was such as to preclude the forming of intent to do the act complained of, then the jury must decide whether such an intent was present or blocked. If the evidence of intent to do harm is such that it existed in spite of the insanity, then insanity is irrelevant on the issue of intent. This is so even if the insanity is such that it would excuse the actor from *criminal* responsibility, applying the criminal law standard of insanity. As the Supreme Court summarized in *State Farm Fire &c. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988): "The policy here deals simply with *presence* of intent or expectation and not with factors contributing to or subtracting from intent or expectation." (Emphasis supplied.) What caused him to have the intention (or expectation) is not what matters; what matters is whether he had the intention or not. For the same reason, the criminal ramifications of the cause of the intention are irrelevant.

Thus, in the present case, whether the actor could distinguish between right and wrong, or could not resist committing the act, do not create a jury issue, given the unrebutted testimony of the actor that he intended the act and its harmful consequences. The latter is what controls, when the question is whether the bodily injury or property damage for which insurance coverage is sought was "expected or intended by the insured." The exclusion is not limited to *rational* intentions.

This case differs from *State Farm Fire &c. Co.*, supra, because there the evidence did not conclusively establish that the insured intended or expected injury as a consequence of his act. Here it does. Cf. *Roe v. State Farm &c. Cas. Co.*, 188 Ga. App. 368 (373 SE2d 23) (1988).

Decided September 9, 1988 —
Rehearing denied September 23, 1988

*F. Thomas Young, Daniel C. Hoffman*, for appellant.
*J. Converse Bright, Richard J. Joseph, William S. Perry, George T. Talley*, for appellees.