A95A1425. MERRITT et al. v. STATE FARM FIRE &
CASUALTY COMPANY.
(463 SE2d 42)

SMITH, Judge.

Mary Sue Merritt brought suit against Billy Jack Hutto and his daughter, alleging that Hutto "willfully, intentionally and without any justification or provocation shot and killed Raymond Merritt." Merritt also sought to set aside as a fraudulent conveyance Hutto's transfer of his real property to his daughter.[1] After Hutto pleaded guilty but mentally ill to malice murder, State Farm Fire & Casualty Company brought this action seeking a declaration of no coverage under a homeowner's insurance policy issued to Hutto. The policy language excludes coverage for "bodily injury or property damage . . . which is either expected or intended by an insured" or "to any person or property which is the result of willful and malicious acts of an insured." The trial court granted State Farm's motion for summary judgment, and Merritt and the Huttos appeal.

Hutto was charged with murder, felony murder, and three counts of aggravated assault. Ten days before his trial was scheduled to begin, Hutto moved to withdraw his plea of incompetency. He submitted to the trial court the opinions of a psychiatrist and a psychologist that he was competent to stand trial and to assist his attorneys. The trial court questioned Hutto extensively regarding his competence and concluded he was alert, responsive, and fully aware of his rights. Hutto then entered a plea of guilty but mentally ill to one count of murder, and the State expressed its intention to drop the felony murder and aggravated assault charges. Under oath, Hutto acknowledged to the trial court that the facts of the offense as recited by the district attorney were "close. Not exact, but it's something close." The trial court concluded there was a factual basis for the plea. After accepting Hutto's plea of guilty but mentally ill, the trial court sentenced Hutto to life without parole.

In addition to evidence of Hutto's guilty plea, State Farm presented testimony to the effect that the shooting was intentional. This testimony showed that Hutto had an altercation with his wife

---

[1] Hutto transferred his residence by "deed of gift" to his daughter 13 days after the shooting. In interrogatory responses, Hutto claimed he did this because he had no funds to pay the mortgage, but on deposition, Hutto acknowledged he had made this transfer "because I was in trouble and all that stuff," and further stated he had also transferred "the car, trucks, everything out of my name. Why don't you all chase them down and get them back?"

and daughter, "slugged" and "slapped the c___p out of" his wife, threatened his daughter with a pistol, and then retreated to an out-building with several firearms. Sheriff's officers, including Raymond Merritt, were summoned, and Hutto threatened them with a shotgun and a pistol while expressing his intention to kill them in obscene and racially offensive terms. It appeared to the officers from his language that he knew that they were law enforcement personnel and that one of them was an African-American. He attempted to shoot several officers, but both the shotgun and pistol misfired when he pulled the trigger. Hutto then successfully fired his pistol, striking Merritt in the chest and killing him. He then leveled his weapon at Deputy Hill but was shot and subdued by several officers. As Hutto was being carried to the hospital, he stated, "I know I got one of them b_____s," and "I got one of them s_n of a b_____s."

The evidence on the record leaves little doubt that Hutto suffered from some form of mental illness at the time of the shooting. He believed, and apparently still believes, that the CIA and "CIA Auxiliary" implanted satellite transmitters in his ears to send him messages and control his thoughts. The CIA and CIA Auxiliary could also make people invisible or make them "turn to spots" so that they could not be seen. In his deposition testimony, Hutto's recall of the shooting incident was vague, but he acknowledged he saw the "spots" and "pointed the gun at a spot and shot it," and this made the spots go away.

Although he entered a plea of guilty but mentally ill to malice murder, Hutto contended at his deposition that he was insane at the time of the shooting and pleaded guilty because "they just told a bunch of lies, and I had to go along with it to keep myself out of the electric chair." Hutto responded affirmatively to suggestions by his attorney that he did not know he was shooting at anyone, did not see anyone, and had no intent to shoot Raymond Merritt or any other human being. At another point, however, he claimed a loss of memory on the day of the incident and, for this reason, could not state that anything in the recitation of the facts on the date of his guilty plea was specifically false.

A plea of guilty but mentally ill under OCGA § 17-7-131 (g) is nonetheless a plea of guilty and has the same force and effect. *Logan v. State*, 256 Ga. 664, 665 (352 SE2d 567) (1987). Malice, whether express or implied, is a required element of the offense of murder, as opposed to felony murder. OCGA § 16-5-1 (a), (b); compare OCGA § 16-5-1 (c). The policy of insurance at issue here excludes coverage for "malicious" as well as intentional acts.

"A guilty plea is an admission against interest and prima facie evidence of the facts admitted." (Citations and punctuation omitted.) *State Farm Fire &c. Co. v. Moss*, 212 Ga. App. 326, 327 (441 SE2d

809) (1994). In *Moss*, an insurer sought a declaration of no coverage for a shooting incident under the identical policy language at issue here, relying on evidence of the insured's guilty plea to a charge of aggravated assault. The insured filed in opposition an affidavit and deposition testimony in which he contended that the shooting resulted from an accidental discharge of his pistol during "horseplaying" and that he did not intend to commit the assault. In resolving this inconsistency, this Court looked for guidance to the Georgia Supreme Court decision of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), holding that the contradictory testimony of a party-witness, unless reasonably explained, will be construed against him on summary judgment. *Moss*, supra at 327-328. To be reasonable, the explanation must show that "an honest mistake has been made in the first statement." *Prophecy Corp.*, supra at 30 (2). This Court reversed a denial of summary judgment to the insurer in *Moss*, holding that the insured failed to offer a reasonable explanation. "Moreover, the mere fact that the conflicting testimony arose from [Hutto's testimony] in two separate proceedings does not prevent a *Prophecy*-type rule from being invoked; testimony is testimony. [Cit.]" *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 50 (2) (443 SE2d 871) (1994).

Hutto entered a plea of guilty to murder and thus acknowledged under oath that he acted with malice aforethought in shooting Raymond Merritt. After this declaratory judgment action was filed, however, Hutto testified on deposition that he did not voluntarily enter his plea of guilty and did not intentionally shoot anyone because he was insane. Despite this assertion, Hutto does not contend that there was an infirmity in the plea proceedings or that he was incompetent at the time the plea was entered. There is no evidence that he has ever sought to withdraw his guilty plea, and he continues to serve a life sentence.

In essence, Hutto contends he committed perjury in order to escape full criminal responsibility for his misdeeds. He now wishes to retract that perjury in order yet again to escape full responsibility and place it on the shoulders of another, while still retaining the benefits of his perjured testimony. This "explanation" is inherently unreasonable and cannot suffice to fulfill the requirements of *Prophecy Corp.* As in *Moss*, appellants' brief on appeal makes no attempt to explain the contradiction between Hutto's guilty plea and his later deposition, even though counsel who represented Hutto in the plea proceeding continue to represent him and his daughter. *Moss*, supra at 328. We therefore must reject Hutto's contradictory and self-serving testimony with regard to his intent at the time of the shooting.

Hutto also maintains that his contention of insanity at the time of the offense requires a jury to determine the question of his intent

within the meaning of the policy of insurance. This assertion is without merit. In *State Automobile Mut. Ins. Co. v. Gross*, 188 Ga. App. 542 (373 SE2d 789) (1988), an insured contended he shot and killed his neighbor as a result of mental illness and presented psychiatric testimony that he suffered from a delusional compulsion and was unable to distinguish between right and wrong. Testimony regarding delusion or inability to distinguish between right and wrong will not prevent summary judgment on the issue of coverage for intentional acts, however, if the insured makes an admission of intent or if the evidence otherwise demonstrates the insured intended or expected the harmful consequences of his act. Id. at 543. "([E]vidence establishing lack of criminal intent 'does not necessarily demonstrate, in a civil case, that the act is not intentional.')" Id. at 543-544. This Court reversed the trial court's denial of summary judgment, noting the insured admitted under oath that he intended to shoot and kill his neighbor. Id. at 542.

Insureds who plead guilty to charges of child molestation have used similar contentions of insanity in an attempt to maintain coverage under homeowner's policies for personal injury actions brought against them by their victims. In *Roe v. State Farm Fire &c. Co.*, 259 Ga. 42 (376 SE2d 876) (1989), the offender testified that his behavior was caused by an obsessive compulsion and he did not intend to cause harm to the victim. The Supreme Court rejected this argument, holding that "intentional child molestation carries with it a presumption of intent to inflict injury. This presumption is not rebutted by the presentation of the insured's own self-serving testimony." Id. In *Allstate Ins. Co. v. Jarvis*, 195 Ga. App. 335 (393 SE2d 489) (1990) (Beasley, J., concurring specially), the offender presented expert testimony that he was suffering from the mental illness of pedophilia and that the compulsion of his mental illness was so overpowering as to eliminate any volition or intent to inflict injury upon the victim. For this reason, he contended, he did not fall within the intentional acts exclusion of his homeowner's insurance policy. This court resoundingly rejected this argument, observing: "In other words, child molestation is one of those acts which is 'so extreme that public policy does not permit them to be insured.' [Cit.]" Id. at 337. If the offense of child molestation is too extreme to be insurable, the same certainly can be said of malice murder.

*State Farm Fire &c. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988), relied upon by appellants, is inapposite, because it does not consider the effect of admissions by the insured, whether in the form of res gestae statements, testimony, or a plea of guilty. The question raised in *Morgan* was not insanity, but whether the insured was so intoxicated at the time of shooting his victims as to render him incapable of forming intent. While in *Morgan* the Supreme Court found a

jury issue as to whether such an act was intentional within the meaning of a homeowner's insurance policy, there was no evidence of the participants' state of mind before or during the shooting, and no plea or other admission was made by the insured because he killed himself immediately after shooting the victims.

While *Morgan* correctly holds that the standard for determining intent under the contract language of a policy of insurance is distinct from the rules governing intent for the purposes of criminal responsibility, it does not hold that evidence and testimony elicited during a criminal proceeding are irrelevant or inadmissible to show intent in a subsequent civil action growing out of the same facts. If that testimony contains admissions and creates a prima facie showing of malice or an intention to commit the act in question, it will suffice to support summary judgment on the issue of coverage under the exclusion at issue here. If the testimony of the party-witness in opposition to summary judgment is contradictory and is not satisfactorily explained, it must be construed against him under the rule established in *Prophecy Corp. Moss, supra.*

Under this rule, appellants have failed to offer a substantive explanation for the contradiction between Hutto's prior admissions against interest and his later deposition. They therefore have failed to overcome the prima facie case established by State Farm, and the trial court properly granted State Farm's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 3, 1995.

*Reinhardt, Whitley & Wilmot, Glenn Whitley, Edwards & Edwards, H. B. Edwards III, William R. Folsom,* for appellants.

*Sims, Fleming & Spurlin, John S. Sims, Jr., John C. Spurlin,* for appellee.