A04A0208. ESPANOL v. ALLSTATE INSURANCE COMPANY.
(601 SE2d 821)

Phipps, Judge.

Chona Espanol appeals the trial court's order granting summary judgment to Allstate Insurance Company in its declaratory judgment action. She claims that the Allstate homeowner's policy issued to Billy Churchwell does not exclude coverage for damages resulting from Churchwell shooting and killing her husband, Francisco Espanol. Because the policy language expressly excludes coverage for this event, we affirm.

The Churchwells and Espanols were neighbors for about six years and had an amicable relationship for most of those years. Billy Churchwell and Chona Espanol gave different reasons for the change in the relationship, but there is no dispute that during the months leading up to the shooting, Billy Churchwell and Francisco Espanol were not on good terms. Francisco Espanol had filed a police report charging Churchwell with engaging in inappropriate conduct with Espanol's daughter. He also had told Churchwell to stay away from the Espanol children and their house. After that, Churchwell and Francisco Espanol had several verbal confrontations.

Churchwell testified at his deposition that on April 21, 1999, he was in his driveway making noises in an attempt to get his daughter's cat from under their car when he saw one of Espanol's children. Shortly thereafter, Espanol came over and told him to stop harassing his children. Churchwell assumed that the child had thought he was making noises at him and reported it to his father. When Churchwell told him that he had not even spoken to his child, Francisco Espanol said, "Billy, we're going to get you." Churchwell then went inside and called the police.

When a police officer arrived, Churchwell walked out with a beer in his hand and told him, "If you don't stop [Espanol] from harassing me, I'm going to blow him in two." The officer told Churchwell that he could arrest him for saying that. After Churchwell calmed down, he told the officer what had happened. When the officer left Churchwell's house, he did not go talk to Francisco Espanol, and that "really irritated" Churchwell.

Churchwell went back inside, got another beer and considered calling the police again. He decided that they would not do anything so he got his shotgun, set it down next to the table where he was

sitting and began drinking again. Churchwell testified that he did not remember getting up from the table and taking his shotgun or taking the safety off his gun, but did remember going outside. Churchwell said that while he was outside, he saw a beam of light with darkness on either side. The next thing he remembered was the police arriving. He claimed to have no recollection of the shooting.

Churchwell testified that on April 21, prior to the shooting, he had drunk between 12 and 18 light beers. He also had taken Paxil, a drug his doctor had prescribed for anxiety problems. Churchwell said that drinking 12 to 18 beers in a day was not unusual for him. He had previously experienced blackouts from drinking, but had never before seen a beam of light.

John Thomason lived in the neighborhood and knew of the conflict between Churchwell and Espanol. On April 21 at about 5:00 p.m., Thomason was outside running and saw Espanol watering the grass in his yard. He then saw Churchwell walk toward Espanol, move directly behind him and shoot him three times in the back.[1] Churchwell then went back into his house. Thomason said that Espanol did not know that Churchwell was there. Thomason was aware that Churchwell drank a lot, but did not know what he had to drink that day. He said that Churchwell was not staggering at the time of the shooting, but had a determined pace.

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[2] We review the grant of a motion for summary judgment under a de novo standard of review.[3] We view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[4]

Allstate had issued a policy of homeowner's insurance to Churchwell which was in effect on April 21, 1999. The relevant portions of the policy provided coverage as follows:

> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy. . . . We do not cover any bodily injury or property damage intended by, or

---

[1] Espanol died as a result of his injuries.

[2] OCGA § 9-11-56.

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (486 SE2d 684) (1997).

[4] Id.

which may reasonably be expected to result from the intentional acts or omissions of, any insured person, which are crimes pursuant to the Georgia Criminal Code. However, this exclusion shall not apply if such act or omission was for the preservation of life or property. This exclusion applies even if: a) such insured person lacks the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law; b) such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected. This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

The policy defines "occurrence" as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." Although the policy does not define "accident," Georgia law defines an accident as "an event which takes place without one's foresight or expectation or design."[5]

Allstate claims that the foregoing policy language precludes coverage for the incident that caused Francisco Espanol's injuries and death. Chona Espanol claims that there are material issues of fact regarding Churchwell's intent and his ability to form intent that require jury resolution.

Initially, Espanol argues that there is an issue of fact whether Churchwell's actions were taken for the preservation of life or property.[6] Although there was evidence that Churchwell and Espanol were not on good terms and that Espanol had previously threatened Churchwell, there is no evidence that Churchwell shot Espanol in order to preserve life or property. The only evidence of how the shooting occurred came from Thomason, who testified that Churchwell shot Espanol in the back while he was watering his grass and that Espanol never saw Churchwell coming. Clearly, under those circumstances, the exception to the exclusion for acts taken for the preservation of life or property does not apply.[7]

Espanol's main argument is that this case is governed by *State*

---

[5] OCGA § 1-3-3 (2).

[6] As set forth in the above quoted policy language, actions taken to protect life or property constitute an exception to the intentional and criminal acts exclusion.

[7] Cf. *Allstate Ins. Co. v. Justice*, 229 Ga. App. 137, 140 (2) (493 SE2d 532) (1997).

*Farm Fire &c. Co. v. Morgan.*[8] In *Morgan*, the insured was a chronically heavy drinker who, while intoxicated, shot and killed his son, his daughter-in-law and then himself.[9] State Farm filed a declaratory judgment action seeking a declaration that the insured expected or intended the injuries that were the subject of claims against State Farm, thereby precluding coverage under an exclusion for "bodily injury or property damage which is expected or intended by the insured."[10]

The court in *Morgan* considered the issue of whether "intent or expectation on the part of the insured may be presumed from his acts and whether his intoxication is legally relevant to a determination whether the policy exclusion applies."[11] Rejecting the position that OCGA § 16-3-4 (c), which provides that voluntary intoxication is no excuse for any crime, should be incorporated into civil law, the court adopted the view that voluntary intoxication may destroy the intent required to invoke a policy exclusion for acts "intended or expected" by the insured and that the burden is on the insurance company to prove that the injuries were covered by the exclusion.[12] The court determined that because there was evidence that the insured was intoxicated and evidence of his demeanor was conflicting, the evidence did not demand a conclusion as a matter of law that the injuries resulting from the insured's actions were either intended or expected by him.[13]

Although the material facts in *Morgan* and this case are very similar, the policy language is different. In both cases, the policy excludes coverage for intentional acts, but Allstate's policy exclusion is broader. Allstate's policy excludes coverage for intentional and criminal acts even if the insured lacks the mental capacity to form the intent necessary under the law. The policy in *Morgan* dealt "simply with [the] presence of intent or expectation and not with factors contributing to or subtracting from intent or expectation."[14] Thus, this case is not controlled by *Morgan*.

Based on the facts of this case and the policy language at issue, we reject Espanol's argument that whether Churchwell's voluntary intoxication precluded him from forming the necessary intent is a jury question. There is evidence that Churchwell was intoxicated at the time he shot Espanol. But Churchwell's Allstate policy expressly

---

[8] 185 Ga. App. 377 (364 SE2d 62) (1987), aff'd, 258 Ga. 276 (368 SE2d 509) (1988).

[9] Id.

[10] (Punctuation omitted.) Id.

[11] Id. at 378 (1).

[12] Id.

[13] Id. at 379.

[14] *State Farm Fire &c. Ins. Co. v. Morgan*, 258 Ga. 276-277 (368 SE2d 509) (1988).

excludes coverage for his intentional, criminal acts, even if, because of his voluntary intoxication, he lacked the mental capacity to form the actual intent to shoot and kill Francisco Espanol. We therefore find that the trial court properly granted summary judgment to Allstate. We take no position on whether the same exclusion would apply in a case where the inability to form the necessary intent was caused by something other than voluntary intoxication.[15]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED JULY 6, 2004.

*John S. Myers, O. Wayne Ellerbee, Louis K. Polonsky*, for appellant.

*Young, Thagard, Hoffman, Smith & Lawrence, John H. Smith, Jr.*, for appellee.

---

[15] See *Allstate Ins. Co. v. Patterson*, 904 FSupp. 1270, 1286 (D. Utah 1995) (under similar exclusion, an insured's mental state is not irrelevant because the exclusion requires a criminal act or omission and conduct does not constitute a crime unless committed with requisite mental state).