**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2136. GOODWIN et al. v. ALLSTATE INSURANCE COMPANY.

BRANCH, Judge.

Allstate Insurance Company brought suit seeking a declaratory judgment to the effect that it owed no duty to defend or indemnify Louis Malcolm Johnson (now deceased) under Johnson's homeowners policy for the claims asserted against him in the underlying wrongful death suit arising from the fact that Johnson shot and killed his wife. Based on an exclusion in the policy, the trial court granted summary judgment in favor of Allstate. Because the policy is not ambiguous and the claims against Johnson fall within the exclusion, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The facts are not in dispute. As relevant to the issue on appeal, the record shows that on May 27, 2002, Johnson shot and killed his estranged wife and was arrested and charged with murder. Specifically, Johnson got his Smith & Wesson semi-automatic handgun out of his closet and sat in his chair where he waited for his wife, Scarlett Johnson, to come downstairs. When she came downstairs Johnson shot her several times; several spent shell casings were found on the kitchen floor and in the dining room. Mrs. Johnson subsequently died as a result of the shooting. Johnson, in fact, related the above events to a responding officer and added, "I just lost it and shot her." Johnson was involuntarily committed to a state hospital and later found incompetent to stand trial. In addition, there is evidence in the record supporting the conclusion that at the time of the shooting, Johnson had a mental illness "such that he was unable to form the mental intent to shoot Mrs. Johnson." In its appellate brief, Allstate admits that Johnson was "certainly" mentally ill at the time. Johnson died in March 2006 at the state hospital.

Several weeks prior to the shooting, Allstate had issued to Johnson an amended homeowners policy that was in effect at the time of the incident. Johnson was the only named insured on the policy. The policy covers bodily injury "arising from an occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period. . . ." Although the policy does not define the term "accident," in Georgia an accident is defined as "an event which takes place without one's foresight or expectation or design." OCGA § 1-3-3 (2). See also *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 421 (1) (454 SE2d 616) (1995) (same). In addition, the policy expressly excludes coverage for injuries intended by Johnson and injuries reasonably expected to result from acts by Johnson:

> We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person.

Immediately following the above language, the policy includes what we refer to herein as a "lack-of-capacity" clause that provides "[t]his exclusion applies even if: a) Such insured person lacks the mental capacity to govern his or her conduct. . . ." Finally,

3

the exclusion provides that it applies "regardless of whether or not such insured person is actually charged with, or convicted of a crime."

On May 29, 2002, Lesley Goodwin, individually, and as executor of the estate of Scarlett Johnson, together with Scarlett Johnson's children Matthew and Jason Reed, filed a complaint in the Superior Court of Clayton County against Johnson for his wife's wrongful death. Johnson tendered his defense to Allstate, and, in response, Allstate filed the present action seeking a declaration that it is not obligated to defend or indemnify Johnson due to the policy exclusion set forth above. Johnson answered and denied that he intended to shoot his wife. Although the trial court denied Allstate's three prior motions for summary judgment, on the fourth occasion, the court granted Allstate's motion. This appeal ensued.

An insurance policy is a contract, and an insurer may cover certain risks and exclude others:

> Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others.

4

(Footnotes omitted.) *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2) (667 SE2d 90) (2008).[1] When construing an insurance policy, we consider the policy as a whole and attempt to give effect to each provision in the contract "such that it harmonizes with the other provisions." (Footnote omitted.) *Cincinnati Ins. Co. v. Magnolia Estates*, 286 Ga. App. 183, 185 (648 SE2d 498) (2007). Nevertheless, "we construe the policy exclusions most strongly against the insurer and in favor of providing the indemnity sought." (Punctuation and footnotes omitted.) *Fidelity Nat. Title Ins. Co. v. Matrix Financial Svcs. Corp.*, 255 Ga. App. 874, 878 (1) (b) (567 SE2d 96) (2002). See also *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407-408 (4) (730 SE2d 413)

---

[1] Also,

It is important to remember that the legal issues here rise from contract law and not tort or criminal law. Consequently, policy considerations differ from those in tort and criminal cases. Public policy does not prevent a party from assuming by contract duties more burdensome than those imposed by law because of a party's right to refuse the contract. The fact that the insurer drafts the policy adds validity to this statement.

*State Farm Fire & Cas. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988). See also *State Automobile Mut. Ins. Co. v. Gross*, 188 Ga. App. 542, 543-544 (373 SE2d 789) (1988) ("evidence establishing lack of criminal intent does not necessarily demonstrate, in a civil case, that the act is not intentional") (citation and punctuation omitted).

(2012) (trial court obligated to strictly construe language of policy exclusion in favor of insured).

Pretermitting whether the shooting qualifies as a covered "accident" under the policy, we look to the relevant exclusion. The two critical clauses in the exclusion provide (1) that the policy does not cover claims for bodily injury "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person" and (2) that "[t]his exclusion applies even if. . . [s]uch insured person lacks the mental capacity to govern his or her conduct." The appellants contend that these two clauses are "ambiguous and contradictory" because the first clause "excludes coverage for intentional acts" but the second clause provides that an intentional act "includes one committed by one who lacks the mental capacity to govern his or her conduct, in other words, to form intent." The appellants contend, therefore, that the exclusion is ambiguous and should be construed against Allstate, thereby creating a jury issue regarding the meaning of the exclusion. Allstate counters that the exclusion unambiguously applies to the facts of the case.

Looking first to the plain meaning of the policy language, the first clause of the exclusion eliminates policy coverage for bodily injury (a) "intended by" the insured or (b) "which may reasonably be expected to result" from an intentional or criminal

6

act or omission of the insured. Although the former involves the insured's subjective intent, the latter creates an objective standard:

> While the condition "intended by" requires the subjective or conscious desire of the insured to inflict harm, the condition "or which may reasonably be expected" does not.

*Tripp v. Allstate Ins. Co.*, 262 Ga. App. 93, 96 (584 SE2d 692) (2003). Thus, the latter provision is measured by what an objective, reasonable person would expect to result from an intentional act.[2] Id. See also *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 181 (1) (441 SE2d 453) (1994) ("The common understanding of the words 'which may reasonably be expected to result from the intentional or criminal acts of an insured person' clearly creates a universal objective standard."). Accordingly, the presence of the lack-of-capacity clause, which provides that the exclusion applies even if the insured "lacks the mental capacity to govern his or her conduct," does not create an ambiguity. Thus even if an insured might lack the subjective capacity to govern his conduct, a reasonable person could conclude, under an objective standard, that bodily

---

[2] The phrase "intentional act" in this clause of the exclusion plainly refers to the physical act itself, e.g., aiming and pulling the trigger, rather than an to intent to injure. See generally *Roe v. State Farm Fire & Cas. Co.*, 259 Ga. 42 (376 SE2d 876) (1989) (contrasting intent to commit an act with intent to inflict bodily injury).

7

injury might reasonably be expected to result from that insured's act of aiming a gun at a person and pulling the trigger. See, e.g., *Tripp*, 262 Ga. App. at 96 (finding similar exclusion to be clear and unambiguous).

We also conclude that the lack-of-capacity clause plainly applies to the facts of this case. In *Espanol v. Allstate Ins. Co.*, 268 Ga. App. 336, 338 (601 SE2d 821) (2004), the insured, as a consequence of drinking 12 to 18 beers and taking prescription anxiety medication, got his gun, walked up behind his neighbor, and shot him in the back three times. The insured claimed to have no memory of the shooting; he only remembered going outside and seeing a "beam of light with darkness on either side." Id. at 337. Allstate obtained summary judgment in its declaratory judgment action, based on a similar exclusion with a similar lack-of-capacity clause. The trial court found that it expressly excluded coverage for any claim against the insured, despite the insured's state of intoxication. Id. at 336. The *Espanol* policy excluded bodily injury

> intended by, or which may reasonably be expected to result from the intentional acts or omissions of, any insured person, which are crimes pursuant to the Georgia Criminal Code. . . .This exclusion applies even if: . . . such insured person lacks the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his

8

or her conduct to the requirements of the law or to form the necessary intent under the law.

Id. at 337-338. In *Espanol*, this Court distinguished the primary case upon which the appellants herein rely because the policy in that case did not include a lack-of-capacity clause:

> Allstate's policy exclusion is broader. Allstate's policy excludes coverage for intentional and criminal acts even if the insured lacks the mental capacity to form the intent necessary under the law. The policy in [*State Farm Fire & Cas. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988)] dealt "simply with the presence of intent or expectation and not with factors contributing to or subtracting from intent or expectation."

(Footnote omitted.) Id. at 339. This Court then held that because the policy in *Espanol* expressly excluded coverage even if the insured lacked the mental capacity to form

9

the intent to shoot and kill the neighbor, the insured's intoxication was irrelevant to the question of insurance coverage. Id.[3]

We find the reasoning in *Espanol* persuasive. Thus, here, even if Johnson lacked the mental capacity to intend to shoot and kill his wife, he plainly intended to aim the gun and pull the trigger, and his mental state is irrelevant to the question of coverage because the lack-of-capacity clause provides that the exclusion applies even if Johnson "lack[ed] the mental capacity to govern his or her conduct." Accordingly, the trial court did not err by granting summary judgment in favor of Allstate.

*Judgment affirmed. Phipps, C. J., concurs. Ellington, P. J., concurs in judgment only.*

---

[3] It is true that this Court in *Espanol* expressly did not address "whether the same exclusion would apply in a case where the inability to form the necessary intent was caused by something other than voluntary intoxication" and cited a case holding that the insured's mental state was not irrelevant to the question of coverage. Id., citing *Allstate Ins. Co. v. Patterson*, 904 FSupp 1270, 1286 (D. Utah 1995) (involving claims of sexual abuse by two teenage boys on two younger boys, and applying Utah law). But *Patterson* is distinguishable. *Patterson* involved two exclusions: an intentional injury exclusion and a criminal acts exclusion. 904 FSupp at 1285 (2). The intentional injury exclusion did not include the objective, reasonable expectation of injury test nor the lack-of-capacity clause found herein, and the case is therefore distinguishable on that ground. And the *Patterson* court's reasoning regarding the criminal acts exclusion is not applicable here, even as an analogy, because the language of the exclusion in *Patterson* requires a criminal act or omission, including intent; it was not measured by an objective, reasonable expectation of injury test found in the present case. Id.

10