[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 95-8973

———————————

D. C. Docket No. 1:93-CR-437-1-JOF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHARKE FERNANDO BANKSTON,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————

**September 4, 1997)**

Before HATCHETT, Chief Judge, TJOFLAT, Circuit Judge, and CLARK,
Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Under the United States Sentencing Commission guidelines, a convicted defendant is a "career offender" if, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (Nov. 1, 1994). The question this appeal presents is whether a felony conviction for a crime of violence that is based on a plea of "guilty but mentally ill" ("GBMI") under Ga. Code Ann. § 17-7-131 (1986) qualifies as a conviction within the meaning of section 4B1.1. We conclude that it does.

I.

A.

On May 4, 1995, Sharke Bankston pled guilty in the United States District Court for the Northern District of Georgia to the offense of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (1994).[1] The court accepted his plea and directed its probation office to prepare a presentence investigation report ("PSR"). The PSR disclosed that Bankston had three previous felony convictions in Georgia, all for crimes of violence: an

---

Section 2113(a) states in pertinent part: "Whoever, by force or violence, . . . takes, or attempts to take . . . any property or money . . . belonging to . . . any bank . . .[s]hall be fined . . . or imprisoned not more than twenty years, or both." 18 U.S.C. § 2113(a) (1994). Section 2113(d) states that "[w]hoever, in committing, or in attempting to commit [a bank robbery], assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined . . . or imprisoned not more than twenty-five years, or both." 18 U.S.C. § 2113(d) (1994).

In committing the instant offense, Bankston threatened to kill one bank teller and held a dangerous weapon, a metal-tipped ballpoint pen, to the neck of another bank teller.

2

aggravated assault and kidnapping conviction on June 27, 1978; an armed robbery and possession of firearm by convicted felon conviction on May 19, 1986; and an aggravated assault and possession of firearm by convicted felon conviction on June 6, 1986. The latter two convictions were based on GBMI pleas under Georgia law.

The PSR treated these convictions as "prior felony convictions" under section 4B1.1 and thus classified Bankston as a career offender. This classification had the effect of increasing Bankston's offense level of 25 for the bank robbery to an offense level of 31.[2] Given his criminal history category of VI,[3] his sentencing range was 188-235 months of imprisonment.

At the sentencing hearing, Bankston objected to the PSR's determination that he qualified as a career offender on the ground that prior convictions under section 4B1.1 must result from a "guilty plea, trial, or plea of nolo contendere." If the convictions at issue did not qualify as such prior convictions, he correctly observed, the court could not sentence him as a career offender.

Overruling Bankston's objection, the district court found that either of the GBMI convictions, when combined with the June

---

Pursuant to his plea agreement with the Government, Bankston received a three-point reduction for "acceptance of responsibility." Otherwise, his offense level would have been 34 instead of 31.

Even without the career-offender classification, Bankston's criminal history category was VI because he had 15 criminal history points. See U.S.S.G. Ch.5, Pt.A (Sentencing Table) (Nov. 1, 1994).

27, 1978, aggravated assault and kidnapping conviction,[4]

qualified Bankston as a career offender under section 4B1.1.[5]

More specifically, the court analogized the GBMI plea to a plea

of nolo contendere, finding that a GBMI plea under Georgia law

did not establish that a defendant was actually mentally ill at

the time of the offense.  Accordingly, the court sentenced

Bankston to 212 months of imprisonment in the custody of the

Bureau of Prisons, five years supervised release, and a $50

special assessment.  Bankston now appeals his sentence.


                              B.

    The career offender guideline, section 4B1.1, states:

    A defendant is a career offender if (1) the defendant was at
    least eighteen years old at the time of the instant offense,
    (2) the instant offense of conviction is a felony that is
    either a crime of violence or a controlled substance
    offense, and (3) the defendant has at least two prior felony
    convictions of either a crime of violence or a controlled
    substance offense.

U.S.S.G. § 4B1.1 (Nov. 1, 1994).  The commentary to section

4B1.2, which is the companion guideline to section 4B1.1, defines

a "prior felony conviction" as "a prior adult federal or state

conviction for an offense punishable by death or imprisonment for

---

        Bankston did not object to the use of the June 27, 1978,
conviction as a predicate offense.  He served the sentence for
that conviction until November 20, 1985, thus falling within the
15-year window for consideration of prior felony sentences.  See
U.S.S.G. § 4A1.2(e)(1) (Nov. 1, 1994).

        The court applied the 1994 version of the sentencing
guidelines because a sentencing court must use the guidelines in
effect at the time of sentencing.  See United States v. Camacho,
40 F.3d 349, 354 (11th Cir. 1994), cert. denied, 514 U.S. 1090,
115 S.Ct. 1810, 131 L.Ed.2d 735 (1995).

4

a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, comment. (n.3) (Nov. 1, 1994). The term "'convicted of an offense' . . . means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere." U.S.S.G. § 4A1.2(a)(4) (Nov. 1, 1994).[6]

Bankston urges us to adopt a strict interpretation of section 4B1.1 and find that a prior conviction based on a GBMI plea under Georgia law cannot be used as a predicate offense to establish career offender status. First, he submits that finding him to be a career offender has a severe effect on his sentence: with the enhancement, his sentencing range increases from 110-137 months imprisonment to 188-235 months. Second, he contends that the Sentencing Commission, by omitting the GBMI plea from sections 4B1.1 and 4A1.2(a)(4), intended that only convictions established by guilty plea, trial, or plea of nolo contendere be used as predicate offenses to establish career offender status. The fact that several states had authorized use of the GBMI plea by the time the first sentencing guidelines were drafted, he argues, manifests the Sentencing Commission's intent to exclude that plea from the career offender guideline. He also suggests that a conviction based on a GBMI plea indicates a lesser degree of culpability than a conviction established by guilty plea,

The career offender guideline incorporates the definitions and instructions for computing criminal history found in § 4A1.2. See U.S.S.G. § 4B1.2, comment. (n.4) (Nov. 1, 1994).

trial, or plea of nolo contendere.  Thus, if we were to find the

career offender guideline ambiguous, Bankston asks that we apply

the "rule of lenity" in his favor.

In response, the Government asserts that Bankston's GBMI

convictions under Georgia law qualify as "prior felony

convictions" under section 4B1.1.  Citing portions of the statute

authorizing the GBMI plea, Ga. Code Ann. § 17-7-131, the

Government argues that a conviction based on a GBMI plea has the

same operation at law as any other guilty plea, and should be

treated as such for purposes of the career offender guideline.


                              II.

We agree with Bankston that section 4B1.1 does not

explicitly state that a conviction established by a GBMI plea

should be considered a "prior felony conviction."  Furthermore,

we have located no authority that reveals what the Sentencing

Commission intended by incorporating section 4A1.2(a)(4)'s

definition of "convicted of an offense" into section 4B1.1's

"prior felony conviction" requirement.[7]

Our analysis, however, should not end at this point.  The

issue is whether a conviction established by a GBMI plea under

Georgia law should be considered a conviction established by a

---

We question the district court's use of its analogy
between the plea of GBMI and the plea of nolo contendere as a
basis for applying the career offender guideline at sentencing.
Moreover, as will be discussed, infra, the court misstated
Georgia law in finding that a GBMI plea does not reflect that the
defendant was, in fact, mentally ill at the time of the offense.

guilty plea under section 4A1.2(a)(4) of the guidelines.  Because

we lack express guidance from the Sentencing Commission on this

issue, we turn to the question whether a GBMI plea under Ga. Code

Ann. § 17-7-131 (1986), the statute under which the convictions

in dispute were established, is a "guilty plea" within the

meaning of section 4A1.2(a)(4).[8]  If a conviction based on a GBMI

plea has the same force and effect under Georgia law as a

conviction based on a guilty plea, then Bankston's convictions

may be used as "prior felony convictions" under section 4B1.1 to

enhance his sentence.


A.

The state of Georgia has allowed criminal defendants to

plead GBMI since the state legislature made extensive revisions

to section 17-7-131 in 1982.  Under the amended version of that

statute, the trial judge must instruct the jury that they may

consider four possible verdicts when the accused contends that he

was insane or otherwise mentally incompetent at the time of the

offense: (1) "guilty"; (2) "not guilty"; (3) "not guilty by

reason of insanity at the time of the crime"; (4) "guilty but

_____

Although the current version of § 17-7-131 is essentially the same statute under which Bankston twice pled GBMI and was convicted in 1986, we have reconstructed by reference to past Georgia session laws the exact version of § 17-7-131 that was in effect at that time.  Section 17-7-131 has been amended four times since 1986, and the version under which Bankston pled GBMI was in effect from July 1, 1985, to July 1, 1988.  Even though no such version of the statute can be currently found in the Official Code of Georgia Annotated, we refer to this version as "§ 17-7-131 (1986)" for accuracy and clarity.

7

mentally ill at the time of the crime." Ga. Code Ann. § 17-7-131(c) (1986).[9] In fact, in all cases in which the accused interposes the defense of insanity, the judge is required to give the following jury instruction about the GBMI verdict: "I charge you that should you find the defendant guilty but mentally ill at the time of the crime, the defendant will be given over to the Department of Corrections or the Department of Human Resources, as the mental condition of the defendant may warrant." Ga. Code Ann. § 17-7-131(b)(3)(B) (1986); Spraggins v. State, 364 S.E.2d 861 (Ga. 1988). Under section 17-7-131, the term "mentally ill" means "having a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." Ga. Code Ann. § 17-7-131(a)(2) (1986). Furthermore, contrary to the erroneous statement made by the district court at sentencing, a GBMI plea manifests a recognition that the defendant was mentally ill at the time of the offense: a court in Georgia cannot accept "[a] plea of guilty but mentally ill at the time of the crime . . . until the defendant has undergone examination by a licensed psychologist or psychiatrist and the court has examined the psychological or psychiatric reports, held a hearing on the issue of the defendant's mental condition, and is satisfied that there

---

In 1988, the Georgia legislature added the fifth possible verdict of "guilty but mentally retarded," see Ga. Code Ann. § 17-7-131(c) (1988), which remains operative in the current version of the statute, see Ga. Code Ann. § 17-7-131(c) (1990 & Supp. 1996). In essence, a guilty but mentally retarded conviction has the same operation at law as a GBMI conviction. See Ga. Code Ann. § 17-7-131(g) (1990 & Supp. 1996).

is a factual basis that the defendant was mentally ill at the time of the offense." Ga. Code Ann. § 17-7-131(b)(2) (1986).

A review of section 17-7-131 reveals that a conviction based on the GBMI plea has the same operation at law as a conviction based on a plea of guilty. The State of Georgia bears the same burden of proof when trying to secure a GBMI verdict as it does when trying to secure a guilty verdict. Section 17-7-131(c)(2) states that a defendant may be found GBMI only if "the jury, or court acting as trier of facts, finds beyond a reasonable doubt that the defendant is guilty of the crime charged and was mentally ill at the time of the commission of the crime." Ga. Code Ann. § 17-7-131(c)(2) (1986); see also Keener v. State, 334 S.E.2d 175, 178 (Ga. 1985) ("The burden is on the state to prove that the defendant is guilty of the crime charged, including the requisite element of intent, beyond a reasonable doubt."). The statute, moreover, directs the court to sentence a defendant found GBMI as it would sentence a defendant found guilty: if a defendant is found GBMI, "the court shall sentence [the defendant] in the same manner as a defendant found guilty of the offense." Ga. Code Ann. § 17-7-131(g)(1) (1986) (emphasis added).

The sole substantive distinction between a conviction based on a GBMI plea and one based on a guilty plea relates to the incarceration and treatment of the defendant after sentencing. A defendant found GBMI is evaluated by a psychiatrist or a licensed psychologist from the Georgia Department of Human Resources after

9

sentencing and prior to transfer to a Department of Corrections facility. Ga. Code Ann. § 17-7-131(g)(1) (1986). If the GBMI defendant is determined not to be in need of immediate hospitalization, then he is committed to an appropriate penal facility, like any other convicted offender, with the caveat that he "shall be further evaluated and then treated, within the limits of state funds appropriated therefor." Ga. Code Ann. § 17-7-131(g)(2) (1986). Afterwards, an incarcerated GBMI defendant may be transferred back to the Department of Human Resources if such action is "psychiatrically indicated for his mental illness." Ga. Code Ann. § 17-7-131(g)(3) (1986). If the GBMI defendant is determined to be in need of immediate hospitalization after conviction, then he may be transferred to a designated mental health facility. Ga. Code Ann. § 17-7-131(g)(4) (1986).[10] Finally, the court may require a GBMI defendant, unlike a defendant who enters a plea of guilty, to undergo psychiatric treatment as a condition of probation. Ga. Code Ann. § 17-7-131(h) (1986).[11]

---

We infer from the statute that a GBMI defendant is returned to the penal facility if and when his mental health improves.

Effective July 1, 1988, the Georgia legislature made another significant distinction between a defendant who pleads GBMI and a defendant who pleads guilty. Under section 17-7-131(j), a defendant who pleads GBMI or guilty but mentally retarded cannot be sentenced to death; the most severe sentence that the court can impose is life imprisonment. Ga. Code Ann. § 17-7-131(j) (1990 & Supp. 1996). This additional distinction is of no moment here, however, because this subsection was not in effect at the time Bankston was sentenced for the offenses at issue.

In <u>Logan v. State</u>, 352 S.E.2d 567 (Ga. 1987), the Supreme Court of Georgia removed all doubts that a conviction based on the GBMI plea under Georgia law has the same operation at law as a plea of guilty. In <u>Logan</u>, the defendant pled GBMI to "malice murder" and was sentenced to life imprisonment. <u>Id.</u> at 568. He subsequently filed a motion to withdraw his plea, which the lower court denied. <u>Id.</u> After petitioning unsuccessfully for state habeas corpus relief, the defendant filed a motion for an out-of-time appeal and an extraordinary motion for a new trial in order to challenge the entry of the GBMI plea. <u>Id.</u> The Georgia Supreme Court affirmed the judgment on the ground that the GBMI plea was valid and properly entered. <u>Id.</u> at 568-69. In reaching this conclusion, the court found that a verdict based on a GBMI plea under section 17-7-131 "has <u>the same force and effect as any other guilty verdicts</u>, with [the] additional provision that the Department of Corrections or other incarcerating authority provide mental health treatment for a person found guilty but mentally ill." <u>Id.</u> at 568 (emphasis added); <u>see also</u> <u>Merritt v. State Farm Fire & Casualty Co.</u>, 463 S.E.2d 42, 44 (Ga. Ct. App. 1995) ("A plea of guilty but mentally ill under OCGA § 17-7-131(g) is nonetheless a plea of guilty and has the same force and effect.").

In light of section 17-7-131 and the Georgia Supreme Court's ruling in <u>Logan</u>, we find that a conviction based on the GBMI plea has the same force and legal effect as a conviction established

11

by a plea of guilty.  We therefore hold that a plea of "guilty but mentally ill" is a "guilty plea" within the meaning of section 4A1.2(a)(4) of the sentencing guidelines, and that the convictions at issue qualify as "prior felony convictions" under section 4B1.1.

The district court did not err in using Bankston's May 19, 1986, and June 6, 1986, convictions to enhance his sentence pursuant to the career offender guideline.  His conviction and sentence are therefore

AFFIRMED.