## A99A0182. THOMPSON v. THE STATE.
### (517 SE2d 339)

BEASLEY, Presiding Judge.

Thompson appeals his conviction of two counts of armed robbery (OCGA § 16-8-41) and one count each of aggravated assault (OCGA § 16-5-21) and possession of a firearm during the commission of a felony (OCGA § 16-11-106). For the armed robberies, he was given a mandatory sentence of life imprisonment as a recidivist. OCGA § 17-10-7 (c). His co-indictee, Harvest Beaudry, avoided the possibility of receiving such a sentence by pleading guilty to the armed robberies and testifying against Thompson at his trial.

The victims of the robberies were Ricky Sweet and Pamela Bouchard. Sweet testified, but Bouchard died of an apparent drug overdose prior to trial. Testimony she gave at the preliminary hearing was admitted into evidence.

The victims testified that at around midnight on December 8, 1996, Sweet went to Cooter's Lounge in Savannah where he met Bouchard. He also became acquainted with Thompson and Beaudry, who were together. Sweet agreed to give all three a ride home. After directing Sweet along a circuitous route, Thompson asked him to stop at a street corner so he and Beaudry could exit the car. After they did so, Thompson produced a gun, instructed Sweet to hand over his wallet, and told Beaudry to get Bouchard's purse. Although Sweet complied with Thompson's instructions, Bouchard resisted and a struggle over the purse ensued between her, Beaudry, and Thompson. Thompson struck Bouchard on the head with the gun, causing her to bleed profusely. After Thompson and Beaudry fled, Bouchard was taken to the hospital. Shortly thereafter, Thompson and Beaudry were apprehended by police and were later positively identified by both Sweet and Bouchard. Police recovered Bouchard's purse, Thompson's wallet, and the gun at or near the crime scene. Nothing was missing.

Thompson's version is that upon leaving the bar, he gave his wallet to Beaudry and Sweet turned his wallet over to Bouchard, so the women could collect money for cocaine which Sweet suggested they purchase. He asked Sweet to stop the car because Beaudry took his wallet and put it in her purse. During the struggle between the two women over the purse, a gun was observed inside. Thompson fled the scene as the women continued to fight. Palmer, another Cooter's patron, testified that Bouchard possessed a gun that night and was

extremely intoxicated.

Although Beaudry appeared as a State's witness, her testimony recounted events mostly consistent with Thompson's version. But Beaudry was impeached with testimony she had given at her probation revocation hearing and with a pretrial statement to police, which tracked the victims' description. She was also impeached with prior criminal convictions. She claimed she had been lying earlier but was testifying truthfully at the trial.

1. Thompson first contends he was deprived of a fair trial as a result of the court's refusal to declare a mistrial or give curative instructions and rebuke counsel, after the prosecuting attorney suggested Beaudry was testifying untruthfully.

After Beaudry testified in a manner inconsistent with her prior testimony, the prosecuting attorney directed her: "Let's try this again, because I don't want you to get in any more trouble." Thompson's motion for a mistrial was denied. When the prosecutor then commented to Beaudry that "this time I want you to tell the truth," Thompson asked the jury to be instructed that determinations as to the credibility of witnesses are solely within the province of the jury. Without giving any instructions to the jury at that point, the court granted the prosecutor permission to treat Beaudry as a hostile witness and impeach her with her prior inconsistent testimony and statement.

Contrary to Thompson's arguments on appeal, the requested instruction was given to the jury, in the court's general charge. Of course, it is preferable to instruct at once, so as to clear the matter while it is fresh in jurors' minds. Misconceptions are easier to dig out before they take root. But it was not reversible error to wait.

Also, it was not error to refuse a mistrial or fail to rebuke counsel. Such remedies are required when counsel, by way of argument, introduces facts not in the record and calculated to prejudice the accused.[1] That is not what happened here. "That [the witness] may not have told the truth was a permissible inference from the evidence" and did not constitute an objectionable comment by counsel.[2]

2. Thompson also claims he was denied a fair trial by the court's refusal to instruct the jury as to the meaning of a guilty plea entered pursuant to *North Carolina v. Alford.*[3]

---

[1] See OCGA § 17-8-75; *Smith v. State*, 118 Ga. App. 464, 465 (1) (164 SE2d 238) (1968); *Thompson v. State*, 150 Ga. App. 567, 568 (2) (258 SE2d 180) (1979); *Simmons v. State*, 174 Ga. App. 171, 177 (12) (329 SE2d 312) (1985); *Hall v. State*, 180 Ga. App. 881, 882 (3) (350 SE2d 801) (1986).

[2] *Shy v. State*, 234 Ga. 816, 824 (218 SE2d 599) (1975); see *Thomas v. State*, 146 Ga. App. 501 (1) (246 SE2d 498) (1978) (disapproving *Iler v. State*, 139 Ga. App. 743 (3) (229 SE2d 543) (1976), to the extent that it conflicts with *Shy*).

[3] 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).

Two of the convictions used to impeach Beaudry were for the armed robberies in this case, based on *Alford* guilty pleas. Thompson was concerned with the prejudicial effect of having the jury informed that his co-indictee had been convicted of the armed robberies of which he was charged, and he requested a jury charge explaining the meaning of an *Alford* plea. The trial court refused because the request was that the jury be instructed that an *Alford* plea is not a guilty plea.

Since an *Alford* plea is a guilty plea, the court did not err in rejecting the requested charge.[4] *Alford* does permit a criminal defendant to plead guilty while claiming to be innocent, where the defendant intelligently concludes that it is in his best interest to enter such a plea, but the plea is one of guilt and may be accepted only if the court determines there is a factual basis for a determination of guilt.[5] That is precisely what transpired at Beaudry's guilty plea hearing.

3. Thompson maintains that the court's refusal to allow him to call Luther Harley as a defense witness resulted in the denial of his right to a fair trial.

Thompson invoked the reciprocal discovery provisions of OCGA § 17-16-1 et seq. OCGA § 17-16-8 (a) requires the prosecuting and defense attorneys to furnish each other with names, locations, dates of birth, and telephone numbers of the party's witnesses prior to trial unless, for good cause shown, the court alternatively orders that counsel merely be provided with an opportunity to interview the opposing witness prior to the witness testifying. If defendant fails to comply with discovery requirements, OCGA § 17-16-6 provides that, among other things, the court may give opposing counsel an opportunity to interview the undisclosed witness or, upon a showing of bad faith and prejudice, prohibit the witness from testifying.

On the morning of the first day of trial on September 17, 1997, defense counsel sought permission to present the testimony of Harley as a newly discovered defense witness. The court agreed to consider admitting the evidence if Thompson could make a showing of relevance. Later during the trial's first day, defense counsel expected Harley to testify that during early evening hours on the night of the alleged robberies he had been at Captain's Lounge in Savannah where he had seen Bouchard drinking heavily. The court acknowledged that testimony on this subject would be relevant. When the prosecuting attorney complained that she did not have adequate time to investigate, the court stated that the prosecution would be given

---

[4] See generally *Register v. State*, 229 Ga. App. 648 (1) (494 SE2d 555) (1997) (a request to charge must embody, among other things, a correct statement of law).

[5] See *Brower v. State*, 230 Ga. App. 125 (495 SE2d 600) (1998).

an opportunity to interview the witness if he were allowed to testify. The prosecuting attorney asked that she be provided with the witness's date of birth and social security number, and defense counsel responded that he did not have such information but would try to obtain it.

When trial began the next day, Harley had not been located and the prosecutor had not been given the information she requested. As the trial was concluding later in the day, Harley appeared. The court asked the defense to explain how his testimony was newly discovered. Counsel responded that apparently he had been in the courthouse on another matter the day before, happened to encounter Thompson's relatives who are acquaintances of his, inquired about the reason for their presence and, when so informed, realized he had knowledge concerning Bouchard's activities on the night in question (approximately one and one-half years earlier). Finding this explanation wholly incredible, the court determined that Thompson (though not necessarily his attorneys) claimed in bad faith that the witness was newly discovered and that the State had been prejudiced by its lack of requested information concerning the witness. The witness was not allowed to testify.

The trial court's findings on matters such as these are accepted unless they are clearly erroneous.[6] Here they were warranted; the court did not abuse its discretion in refusing to allow the witness to testify.[7] Besides, another defense witness testified to Bouchard's high degree of intoxication on the night in question, so the court's bar to Harley's testimony was not so prejudicial as to deny Thompson a fair trial.

4. Thompson contends there was insufficient evidence from which a jury could have found him guilty beyond a reasonable doubt and that the verdict is contrary to the weight of the evidence.

"This court as a reviewing court must not necessarily pass on the weight of the evidence, but on the sufficiency of the evidence to support the verdict. On appeal of a conviction based on a jury verdict we should examine the evidence in a light most favorable to support that verdict. We resolve all conflicts in favor of the verdict. It is the duty of this Court to sustain the verdict if we should find when viewing the evidence in a light most favorable to the verdict that a rational trier of fact could find the defendant guilty beyond a reasonable doubt."[8]

---

[6] *Todd v. State*, 230 Ga. App. 849, 854 (3) (498 SE2d 142) (1998).
[7] *Williams v. State*, 226 Ga. App. 313, 314 (1) (485 SE2d 837) (1997).
[8] (Citations omitted.) *Reid v. State*, 232 Ga. App. 313, 315 (2) (501 SE2d 842) (1998).

Thompson is chargeable with armed robbery if, with the intent to commit theft, he took property from the victims by use of an offensive weapon.[9] The property need not be permanently appropriated.[10] These legal principles lead to the conclusion that the evidence was sufficient to enable any rational trier of fact to conclude beyond a reasonable doubt that Thompson committed the two armed robberies and other crimes of which he was convicted.

5. The next enumeration is that a variance between the allegations of the indictment and proof at sentencing regarding prior convictions resulted in a denial of Thompson's rights to notice, under Georgia statutory law and the due process clauses of the state and federal constitutions.

OCGA § 17-10-2 (a) authorizes the judge conducting a presentence hearing to hear evidence in aggravation of punishment, including the record of any prior criminal convictions of the defendant, "provided that only such evidence in aggravation as the state has made known to the defendant prior to the defendant's trial shall be admissible."

The recidivist count of Thompson's indictment alleged that he was previously convicted of criminal damage to property, burglary, and forgery. Thompson was provided with a pretrial notice that the prior convictions to be admitted at sentencing would be for the burglary and criminal damage to property convictions as well as for possession of a controlled substance with intent to distribute.

The complaint targets the court's consideration of the latter offense since it was not included in the indictment. Yet under OCGA § 17-10-2, " 'it is not required that the prior convictions be included in the indictment but only that the accused receive notice of the state's intention to seek recidivist punishment and of the identity of the prior convictions. (Cits.)' [Cit.]"[11]

6. Finally, Thompson contends he was sentenced as a recidivist in violation of his rights to due process and equal protection under the federal and state constitutions, because the burglary and criminal damage to property convictions resulted from pleas entered on the same date and concurrent sentences were imposed.

OCGA § 17-10-7 (d) provides that for purposes of recidivist sentencing under that Code section, conviction of two or more crimes charged in two or more indictments or accusations "consolidated for trial" shall be deemed to be only one conviction.[12]

---

[9] OCGA § 16-8-41 (a).

[10] *Miller v. State*, 223 Ga. App. 453, 454 (1) (477 SE2d 878) (1996).

[11] *Wainwright v. State*, 208 Ga. App. 777, 778 (2) (a) (432 SE2d 555) (1993); see *Ross v. State*, 210 Ga. App. 455, 458 (4) (436 SE2d 496) (1993).

[12] Id.

Burglary and criminal damage to property convictions were committed against different victims on the same date. Both convictions were the result of separate indictments. A separate order of sentence was entered on each indictment.

> Under these circumstances, the fact that the sentences were entered on the same day and that the sentences on the [one charge] ran concurrent with the [other] sentence does not require the conclusion that the [two] prior convictions had been "consolidated for trial" within the meaning of OCGA § 17-10-7 (c). [Cits.][13]

*Judgment affirmed. Blackburn, J., concurs. Barnes, J., concurs in judgment only.*

DECIDED APRIL 1, 1999.

*Zipperer & Lorberbaum, Alex L. Zipperer, Eric R. Gotwalt*, for appellant.
*Spencer Lawton, Jr., District Attorney, Lori E. Loncon, Benjamin B. Reed, Assistant District Attorneys*, for appellee.

---

[13] *Philmore v. State*, 263 Ga. 67, 70 (6) (428 SE2d 329) (1993); see *Clarke v. State*, 167 Ga. App. 402, 403 (306 SE2d 702) (1983); *Moore v. State*, 169 Ga. App. 24, 27 (7) (311 SE2d 226) (1983).