A03A0080. ARGOT v. THE STATE.

(583 SE2d 246)

ADAMS, Judge.

Candé-Su Argot was indicted for murder and cruelty to children. On April 17, 1998, she pled guilty under *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), to voluntary manslaughter. On August 10, 1998, following a presentence investigation and hearing, the trial court sentenced her to 20 years in prison. On August 27, 1998, Argot filed a motion for reconsideration of her sentence. On September 10, 1998, she filed a motion to withdraw her guilty plea, claiming ineffective assistance of counsel and that the trial court improperly considered her *Alford* plea in imposing sentence. The trial court denied these motions on January 16, 2002, and this appeal followed.

1. Argot argues her plea counsel was ineffective because he gave her misinformation about her eligibility for parole, which led to her decision to plead guilty. "To prevail on [her] ineffective assistance of counsel claim, [Argot] must show that [her] lawyer's performance was deficient and that, but for [his] errors, there is a reasonable probability [she] would have insisted on going to trial. *Hill v. Lockhart*, 474 U. S. 52, 59 (106 SC 366, 88 LE2d 203) (1985)." *Ellis v. State*, 272 Ga. 763, 764 (534 SE2d 414) (2000).

Citing *Williams v. Duffy*, 270 Ga. 580 (513 SE2d 212) (1999), Argot acknowledges that our state appellate courts have previously held that failure to inform a defendant of the parole consequences of a guilty plea does not constitute ineffectiveness of counsel, but she argues ineffectiveness can be shown when counsel affirmatively provides misinformation concerning parole. See *Crabbe v. State*, 248 Ga. App. 314, 315-316 (546 SE2d 65) (2001). Argot argues that in this case, plea counsel misinformed her "that the amount of time that she would have to spend in prison before she would be eligible for parole

would be less under the manslaughter charge than it would be under the murder charge." Argot argues that this information was erroneous, because she will be required to serve 18 years, or 90 percent, of her 20-year sentence for voluntary manslaughter before she will be eligible for parole, but she would have been eligible for parole after 14 years if she had been convicted of the original murder charge and sentenced to life.

The record from the plea hearing shows that the trial court questioned Argot extensively prior to the entry of her plea, and that she unequivocally expressed her understanding that there had been no agreement as to sentencing and that she could be sentenced to the maximum of 20 years in prison. She also denied that she had been told that she would receive a lighter sentence if she pled guilty. At the hearing on her motions for reconsideration of her sentence and withdrawal of her guilty plea, Argot testified that her plea attorney told her that at least a portion of her sentence would "probably" be probated. However, Argot testified that her attorney did not make any comparison between eligibility for parole under a life sentence on a murder conviction and eligibility for parole under a sentence for voluntary manslaughter. Argot further testified that "he didn't even really talk about parole." On cross-examination Argot again reiterated that her plea attorney talked primarily about the chances that some or all of her sentence would be probated, and that she did not remember any particular conversation about parole. The plea attorney also testified that he did not make any guarantees about parole, and that he did not make any representations concerning time spent on parole or time spent incarcerated. The plea attorney testified that he "probably" told Argot that there would be less time to serve on a voluntary manslaughter charge than a murder conviction, because "life would mean life and that would probably be more time than voluntary manslaughter." But he also testified that there was no sentence recommendation, and that he did not represent to Argot that she would be eligible for parole after she served either a certain amount or a certain percentage of her sentence under either charge.

In light of the foregoing, we find that the record does not support Argot's contention that this case falls under the "exception" carved out by this court in *Crabbe v. State.* In *Crabbe* we determined that the attorney rendered ineffective assistance because the defense strategy in plea negotiations was to ensure the defendant's eligibility for parole, the plea attorney "affirmatively misinformed" the defendant that he would be eligible for parole in ten years, and the defendant relied on this misinformation in deciding to enter a guilty plea. Id. at 315-316. In this case, the record shows that the strategy in plea negotiations was to allow Argot to enter a plea to a lesser charge with the hope that the trial judge would probate at least part of her sen-

tence. However, the record clearly demonstrates that Argot understood that there was no agreement as to sentencing, and that she could receive a maximum sentence of 20 years. Moreover, Argot's testimony clearly shows that her eligibility or ineligibility for parole was not specifically discussed with her attorney, and clearly was not a factor in her decision to plead guilty. *Whited v. State*, 258 Ga. App. 195, 197 (3) (573 SE2d 449) (2002).

The fact that the trial judge did impose the maximum sentence, with the collateral consequence under the rules existent at the time that Argot would have to serve more of her sentence before she would be eligible for parole than if she had received a life sentence for a murder conviction, was not something that counsel was required to disclose to Argot in order for her plea to be knowing and voluntary. "Accordingly, counsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance. *United States v. Campbell*, 778 F2d 764, 768 (III) (11th Cir. 1985)." *Williams v. Duffy*, 270 Ga. at 582. "[Argot's] guilty plea was not rendered invalid by any lack of advice regarding parole ineligibility." *Smith v. State*, 249 Ga. App. 666, 668 (3) (549 SE2d 487) (2001); *Johnson v. State*, 260 Ga. App. 897 (581 SE2d 407) (2003); *Harpe v. State*, 254 Ga. App. 458 (1) (562 SE2d 521) (2002).

2. Argot also argues that the trial court improperly considered her *Alford* plea in imposing sentence as shown when it stated that "[t]hree years after the death . . . [Argot] still denies her guilt or takes responsibility for her actions, which is the first and most important step in rehabilitation." Argot further argues that by allowing her to enter her *Alford* plea without informing her that it would consider the plea against her, "the trial court allowed [her] to draw the inference that she would not be harmed by entering the plea under *Alford* and that information shaped her decision to enter the plea." Argot also argues that the court's consideration of her refusal to take responsibility violated her constitutional right to a fair sentencing.

Although "*Alford* does permit a criminal defendant to plead guilty while claiming to be innocent, where the defendant intelligently concludes that it is in his best interest to enter such a plea, . . . the plea is one of guilt and may be accepted only if the court determines there is a factual basis for a determination of guilt." (Footnote omitted.) *Thompson v. State*, 237 Ga. App. 466, 468 (2) (517 SE2d 339) (1999). An *Alford* plea is thus a guilty plea and places the defendant in the same position as if there had been a trial and conviction by a jury. See also *Dixon v. State*, 240 Ga. App. 644, 646 (1) (a) (524 SE2d 734) (1999) (*Alford* plea may be introduced as similar transaction evidence, although plea of nolo contendere may not).

As aptly noted by the Wisconsin Court of Appeals:

> An *Alford* plea does not imply a promise or assurance of anything. . . . There is nothing inherent in the nature of an *Alford* plea that gives a defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction.

*Warren v. Schwarz*, 211 Wis.2d 710, 720 (566 NW2d 173) (Ct. App. 1997).

The Wisconsin Supreme Court subsequently agreed with this statement by the court of appeals and additionally noted "[a] defendant's protestations of innocence under an *Alford* plea extend only to the plea itself." *Warren v. Schwarz*, 219 Wis.2d 615, 632 (579 NW2d 698) (1998).

And the Eleventh Circuit Court of Appeals has noted:

> Once accepted by a court, it is the voluntary plea of guilt itself, with its intrinsic admission of each element of the crime, that triggers the collateral consequences attending that plea. Those consequences may not be avoided by an assertion of innocence. As long as the guilty plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant, [cit.], and a sufficient factual basis exists to support the plea of guilt, [cit.], the collateral consequences flowing from an *Alford* plea are the same as those flowing from an ordinary plea of guilt. Were this not so, defendants pleading guilty would routinely proclaim their innocence to reap two benefits: (1) the avoidance of a trial and a possible reduction in sentence, and (2) the extinguishment of all collateral consequences of their plea. Nothing in . . . *Alford* sanctions this distortion of the pleading process.

*Blohm v. Commr. of Internal Revenue*, 994 F2d 1542, 1554-1556 (11th Cir. 1993).

We find this reasoning persuasive. There is nothing inherent in an *Alford* plea that constrains the sentencing court from considering any permissible factor in imposing sentence. Moreover, in this case, Argot clearly understood that her plea did not involve any agreement concerning sentencing, and there is nothing in the record to indicate her belief that her *Alford* plea would result in any special considerations or limitations in sentencing. We find, therefore, that the trial court did not err in denying Argot's motion to reconsider sentence or withdraw her plea on this basis.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 9, 2003.

*Lee W. Fitzpatrick*, for appellant.

*Garry T. Moss, District Attorney, Allen D. Morris, Assistant District Attorney*, for appellee.