**THIRD DIVISION
MCFADDEN, C. J.,
DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 24, 2020**

# In the Court of Appeals of Georgia

A20A0391. MARCUS et al. v. COUNTRY MUTUAL DO-013 INSURANCE COMPANY.

DOYLE, Presiding Judge.

In this declaratory judgment action filed by Country Mutual Insurance Company against Elisabeth Cannon (its insured) and Vernon and Bridget Marcus (tort claimants), the Marcuses appeal from an order granting summary judgment to Country Mutual on the ground that the acts that caused the injuries at issue were criminal in nature and therefore not covered by Cannon's insurance policy. Because the policy does not cover criminal acts of its insured, and the record before us demonstrates that Cannon's acts were criminal, we affirm the grant of summary judgment to Country Mutual.

On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the

benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.[1]

So viewed, the record shows that for a period of time leading up to January 2017, Cannon observed what she believed was "suspicious activity," loitering, and vandalism by young people on the sidewalk in front of her house. Cannon had made numerous complaints to local authorities, and on the afternoon of January 16, 2017, she again called the police to complain of disorderly juveniles. A sheriff's deputy responded, and Cannon, after using racial epithets, identified three fourteen-year-old African-American boys who she said previously had thrown rocks at her house and car; she admitted that they had not done so on that day. The deputy was able to locate the three boys, who explained that Cannon had called them racial epithets, and they had responded by calling her "bitch." Based on his interaction with Cannon, the deputy warned the boys to stay on the other side of the street when passing by her house, knowing that Cannon was upset and hostile.

---

[1] (Punctuation omitted.) *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (3) (779 SE2d 334) (2015), quoting *Johnson v. Omondi*, 294 Ga. 74, 75-76 (751 SE2d 288) (2013).

The deputy returned to Cannon's residence and told her that there was nothing more he could do. Shortly thereafter, the deputy received another call by Cannon's father, who was upset. The deputy returned to the Cannon property and re-explained the situation to the father. During this conversation, Cannon produced a .38 revolver, and the father expressed concern about Cannon possessing the firearm, but Cannon assured him that she only wanted the weapon for self defense. She explained further that she might scare them by pointing at them and saying "I'll kill you mother f—er." The officer warned her that doing so would constitute a terroristic threat, and he also explained that she could not fire the weapon into the air. The deputy then concluded the visit.

Approximately five hours later, police returned to the scene when Cannon called 911 to report that she had shot someone. Cannon told police that she was in her driveway when the three boys came onto her property and began throwing rocks at her and her adult daughter who had driven to Cannon's home earlier. Cannon gave a statement to police stating, "I only wanted them to leave us alone. . . I only intended to scare them. I felt so threatened. I was so nervous that I shot several times." Cannon stated that she did not intend to hit anyone, but nevertheless shot V. M., a juvenile returning home from the store with a friend. V. M. was struck in the head by a bullet

3

and suffers permanent disabilities as a result. He and his friend apparently were uninvolved in any prior interactions with Cannon.

Based on these events, Cannon was charged with two counts of aggravated assault and one count of aggravated battery. She entered a not guilty plea, but on the morning of trial, she changed her plea to guilty under *North Carolina v. Alford*[2] as to one count of aggravated assault on V. M., and the State nolle prossed the remaining two counts. The court accepted the following factual basis for the plea:

> On January 16, 2017, . . . in the evening . . . officers were dispatched to [the road near Cannon's] residence. There they found [V. M.], a 15-year-old African American male on the sidewalk. He suffered a gunshot wound to the head. He was transported to the Medical Center. The wound was in the back of the head exiting out the front, and the investigation showed that Cannon was the one [who] fired the weapon.

Cannon did not make an assertion of self-defense or justification; the trial court sentenced Cannon to serve fifteen years in prison followed by five years of probation.

In May 2017, V. M.'s parents made a claim under the home insurance policy issued to Cannon by Country Mutual. Country Mutual reserved its rights and filed the present action against Cannon and V. M.'s parents seeking a declaratory judgment as

---

[2] 400 U. S. 25, 37 (91 SCt 160, 27 LE2d 162) (1970).

4

to its obligations under the policy with respect to the shooting. Country Mutual then moved for summary judgment, and after a hearing, the trial court granted the motion. The Marcuses now appeal.

1. The Marcuses contend that the trial court erred by granting summary judgment to Country Mutual despite factual issues in the record. Specifically, they point to an affidavit by Cannon and statements she made during her guilty plea to the effect that she was justified in shooting V. M. because she reasonably feared for her own safety. This, they argue, renders Cannon's conduct not criminally culpable and not subject to the policy's exclusion for criminal acts. Nevertheless, under Georgia case law, because this evidence amounts to self-serving testimony in contradiction of Cannon's earlier admissions during her guilty plea, it does not suffice to create a genuine issue of fact for the purposes of summary judgment.

We begin our analysis by looking at the exclusionary language at issue in the insurance policy:

[Certain liability and coverage provisions] do not apply to the following:

. . .

"Bodily injury" or "property damage" arising from any criminal act. Criminal act means any act or omission which is criminal in nature or

5

for which a penal statute or ordinance permits or requires any term of imprisonment or sentence of public service duties. This exclusion applies regardless of whether any "insured" is actually charged with or convicted of a crime and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made. . . .

It is plain that this language encompasses the offense to which Cannon pleaded guilty, i.e., aggravated assault.[3] Based on the policy language and Cannon's guilty plea to aggravated assault, the trial court ruled that the policy excluded coverage for any injuries caused by Cannon's act of shooting V. M. The Marcuses challenge this ruling by relying on an affidavit filed by Cannon stating that she fired her weapon due to her reasonable fear for her safety, as well as her testimony at her sentencing hearing to the same effect. Based on these sworn statements from Cannon, they argue that there is evidence that Cannon had a justification defense to the criminal charges, so the evidence raises at least a fact question as to the criminality of Cannon's conduct.

In similar cases, in which an insured pleaded guilty to a criminal act, our courts have viewed the guilty plea as prima facie evidence of the facts supporting the guilty

---

[3] See OCGA § 16-5-21 (a) (2).

6

plea.[4] This is true even if the insured entered an *Alford* plea under a claim of innocence:

> [A]n *Alford* plea is one of guilt and may be accepted only if the court determines there is a factual basis for a determination of guilt. [Cannon's] guilty plea under Alford placed [her] in the same position as if [s]he had been convicted of [aggravated assault], and the collateral consequences flowing from an *Alford* plea are the same as those flowing from an ordinary plea of guilt. Accordingly, evidence that [Cannon] entered an *Alford* plea of guilt to [aggravated assault] was sufficient to establish a prima facie case that [Cannon committed a criminal act as defined by the policy].[5]

---

[4] See *Merritt v. State Farm Fire & Cas. Co.*, 218 Ga. App. 652, 653 (463 SE2d 42) (1995) ("A guilty plea is an admission against interest and prima facie evidence of the facts admitted.") (punctuation omitted). In this way, the present case is distinguishable from cases relied upon by the Marcuses in which, for example, the insured did not admit her guilt but instead testified in her own defense at her criminal trial and denied the criminal conduct. See, e.g., *Anderson v. Southern Guar. Ins. Co. of Ga.*, 235 Ga. App. 306, 307 (508 SE2d 726) (1998) ("During the criminal trial, Anderson testified in her own defense that she did not strike or kick [the victim]; that she grabbed [the victim's] foot only to protect herself from being kicked by [the victim], and that [the victim was injured because she] tripped or fell out of the bus.").

[5] (Citations and punctuation omitted.) *Harden v. State Farm Fire & Cas. Co.*, 269 Ga. App. 732, 734 (605 SE2d 37) (2004), citing *Argot v. State*, 261 Ga. App. 569, 572 (583 SE2d 246) (2003) ("Once accepted by a court, it is the voluntary plea of guilt itself, with its intrinsic admission of each element of the crime, that triggers the collateral consequences attending that plea. Those consequences may not be avoided by an assertion of innocence. As long as the guilty plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant, and a

This prima facie evidence showing that Cannon's conduct falls within the criminal act exclusion creates a burden for the Marcuses to point to contrary evidence in the record creating a genuine issue of fact as to the criminality of Cannon's conduct.[6] But Cannon's self-serving affidavit and sentencing testimony are insufficient to do so. Our courts have held that when a person in Cannon's position gives contradictory testimony as to her culpability, absent a reasonable explanation, such as incapacity at the guilty plea, "the law will construe this contradiction against [her]."[7] This is based on the principle in *Prophecy Corp. v. Charles Rossignol, Inc.*,[8]

---

sufficient factual basis exists to support the plea of guilt, the collateral consequences flowing from an Alford plea are the same as those flowing from an ordinary plea of guilt.") (punctuation and citations omitted), adopting quoted language from *Blohm v. Comm. of Internal Revenue*, 994 F.2d 1542, 1554-1556 (III) (2) (D) (11th Cir. 1993).

[6] See *State Farm Fire & Cas. Co. v. Moss*, 212 Ga. App. 326, 327 (441 SE2d 809) (1994) ("Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the non-movant, who must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact.") (punctuation omitted).

[7] (Emphasis omitted.) Id. at 328.

[8] 256 Ga. 27 (343 SE2d 680) (1986).

8

which held that the contradictory testimony of a party-witness, unless reasonably explained, will be construed against the party-witness on summary judgment.[9]

Here, Cannon did not assert a justification defense in the criminal proceeding, and she faces the same collateral consequences as an ordinary plea of guilt. Further, the record does not reveal any infirmity on the part of Cannon or any flaw in the guilty-plea proceedings. "[T]he mere fact that . . . [additional and] conflicting [evidence] arose from [Cannon's self-serving affidavit and testimony] . . . does not prevent a *Prophecy* type rule from being invoked; testimony is testimony."[10] Accordingly, based on the unrebutted prima facie evidence showing that Cannon's conduct was subject to the policy's criminal act exclusion, the trial court did not err by granting summary judgment to Country Mutual.[11]

---

[9] See id. at 30 (2). We recognize that in this case the rule has the effect of being construed against parties (the Marcuses) who are not the party-witness. Even so, the *Prophecy* rule is "applicable in this case since whatever claim the plaintiff[s] may have against the [insurer] is derived from and based on [the insured's] rights under the policy." *Henson v. Atlanta Casualty Co.*, 169 Ga. App. 754, 755 (315 SE2d 268) (1984).

[10] *Merritt*, 218 Ga. App. at 654, quoting *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 50 (2) (443 SE2d 871) (1994), overruled on other grounds by *Robinson v. Kroger*, 268 Ga. 735, 739 (493 SE2d 403) (1997).

[11] See *Moss*, 212 Ga. App. at 328 (affirming the grant of summary judgment to the insurer in light of the insured's failure "to explain the contradiction between his

2. Based on the foregoing, the Marcuses' remaining enumerations are moot.

*Judgment affirmed. Hodges, J., concurs.  McFadden, C. J., dissents.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2.**

---

prior admission against interest in the form of a guilty plea for aggravated assault and his subsequent deposition and affidavit stating that the shooting in question was merely an accident") See also *Trustgard Ins. Co. v. Herndon*, 338 Ga. App. 347, 353 (1) (790 SE2d 115) (2016) (physical precedent only).

A20A0391. MARCUS et al. v. COUNTRY MUTUAL INSURANCE COMPANY.

MCFADDEN, Chief Judge, dissenting.

I respectfully dissent, because the trial court did not properly conduct the analysis required by *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). The order should be vacated and the case remanded for the trial court to do so.

Before construing self-contradictory testimony, a trial court must consider whether "a reasonable explanation is offered for the contradiction[.]" *Prophecy*, 256 Ga. at 30 (2). The trial court erred in this consideration. Citing *Merritt v. State Farm Fire & Cas. Co.*, 218 Ga. App. 652 (463 SE2d 72) (1995), the trial court held that the

insured "change[d] [her] story with self-serving testimony . . . by saying one thing to benefit a criminal case and another to benefit a civil case, [which was] nothing more than perjury."

But what the trial court viewed as perjury is, in fact, the very essence of a guilty plea under *North Carolina v. Alford*, 400 U. S. 25, 37 (91 SCt 160, 27 LE2d 162) (1970) — the defendant "claims innocence [but] has intelligently concluded that it is in [her] best interest to plead guilty[.]" *Duque v. State*, 271 Ga. App. 154 (1) (608 SE2d 738) (2004). It is improper to refer to an *Alford* plea as perjury simply because the defendant maintains her position that she was innocent.

Notably, the *Merritt* decision relied upon by the trial court did not involve an *Alford* plea. See *Merritt*, 218 Ga. App. 652. So the trial court based his consideration of the reasonableness of the contradiction in this case on authority that was not on point, rather than taking into account the purpose of the *Alford* plea in that analysis.

For this reason, the trial court's order should be vacated and the case remanded for the trial court to conduct the reasonableness assessment contemplated by *Prophecy.*