**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1180, A15A1181. CITY OF ALBANY, GEORGIA et al. v.
    PAIT; and vice versa.

MCFADDEN, Judge.

The City of Albany Fire Department terminated the employment of firefighter

Joseph Pait after he pled guilty to two counts of theft. Pait appealed the termination

to the city manager, who held an evidentiary hearing and affirmed the decision. Pait

filed a petition for writ of certiorari in the superior court against the city, fire chief

James Arrowood and deputy fire chief James Carswell. In the petition, Pait sought

review of the city manager's termination decision and also set forth several additional

civil counts for damages and other relief. The superior court granted the writ,

reversed the city manager's decision, and reinstated Pait as a firefighter with back pay

and benefits. The superior court granted summary judgment to the city, Arrowood and

Carswell on all of Pait's civil claims except for a procedural due process claim. The court awarded attorney fees to Pait pursuant to OCGA § 9-15-14, finding that the city, Arrowood and Carswell had, in numerous instances, acted without substantial justification in defending the termination decision.

In Case No. A15A1180, the city, Arrowood and Carswell appeal, arguing that the superior court erred in finding that there was no evidence supporting the city manager's decision to terminate Pait's employment and in finding a procedural due process violation. Because the termination decision was supported by some evidence and there was no procedural due process violation as Pait was given notice and a hearing pursuant to the city personnel ordinance, the superior court's decision was erroneous and must be reversed. The city, Arrowood and Carswell further challenge the trial court's lump sum award of attorney fees to Pait under OCGA § 9-15-14. Because such a lump sum award is not allowed without specific findings allocating fees to sanctionable conduct, the attorney fees award is vacated and the case is remanded with direction.

In Case No. A15A1181, Pait cross-appeals from the trial court's grant of summary judgment to the city, fire chief and deputy fire chief on his various claims

for civil damages and other relief. But because Pait has failed to show any error by the record, we affirm that ruling.

*Case No. A15A1180*

1. *Sufficiency of the evidence.*

The city, Arrowood and Carswell ("appellants") assert that the superior court erred in holding that the city manager's termination decision was not supported by sufficient evidence. We agree.

> The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by any evidence. On appeal to this [c]ourt, our duty is not to review whether the record supports the superior court's decision[,] but whether the record supports the initial decision of the local governing body or administrative agency. Neither the superior court nor this [c]ourt reweighs credibility determinations of the factfinder. In other words, because the factfinder in the initial proceedings is charged with weighing the evidence and judging the credibility of the witnesses, the superior court and this [c]ourt must view the evidence in the light most favorable to the factfinder's decision and must affirm the decision if there is any evidence to support it, even when the party challenging the factfinder's conclusions presented evidence during the initial proceedings that conflicted with those conclusions.

*DeKalb County v. Bull*, 295 Ga. App. 551, 552 (1) (672 SE2d 500) (2009) (citations, punctuation and emphasis omitted).

3

Viewed in the light most favorable to the city manager's decision, the evidence presented at the termination hearing shows that in June 2002, the fire department received notice from the police department that Pait was suspected of theft. On December 19, 2003, Pait pled guilty to two misdemeanor counts of theft by taking and one misdemeanor count of criminal trespass. He was sentenced to a total of 24 months of probation and was given first offender treatment. On December 24, 2003, deputy chief Carswell, at the direction of Arrowood, sent a letter to Pait notifying him that his employment was being terminated for theft. The letter referenced Section V, Articles 2 and 7, of the fire department standards of conduct, which provide that causes for dismissal include, but are not limited to, conviction of a felony or crime of moral turpitude, and the theft or destruction of department or public property. The letter notified Pait that he could appeal the decision to the city manager, and Pait requested a hearing.

On February 6, 2004, the city manager held the hearing, at which Pait appeared with counsel. At the hearing, Arrowood explained that because firefighters have access to other people's property, the department holds its members to a high standard with regard to theft, and the department practice was to terminate any employee involved in theft regardless of whether there had been a conviction. With

4

regard to the theft and criminal trespass charges to which he had pled guilty, Pait admitted that he had gone onto the property in question, taken a canoe and other items, sold the canoe for $200, and would have sold the other items but never had the chance. Despite his guilty pleas, Pait claimed that he had no criminal intent when he entered onto another's property and took the items because he thought they were abandoned, and he presented his mother and two other witnesses to support this claim.

Ten days after the hearing, on February 16, 2004, the city manager issued her decision upholding the termination of Pait's employment "based upon [Pait's] admission that [he] did, knowingly and willingly remove property belonging to a private citizen without their consent." Additionally, the city manager found that Pait's conduct violated the fire department's standards of conduct, and she particularly identified the same two standards that had been referenced in the department's termination letter as Section V, Articles 2 and 7.

In reversing the city manager's decision, the superior court found that it was not supported by any evidence because Pait's guilty pleas to theft by taking were given first offender treatment and thus did not constitute convictions, and because the property taken by him was from a private citizen. Accordingly, the superior court

5

concluded, there were no violations of either of the fire department standards cited by the city manager, one which required a conviction (Section V, Article 2) and the other which required theft or destruction of department or public property (Section V, Article 7). The superior court further found that those two standards provided the only basis in the record for the termination of Pait's employment.

The superior court, for the reasons explained above, was correct in concluding that the two cited department standards of conduct did not support the termination. However, the court erred in finding that those were the only two grounds in the record that supported the city manager's decision to terminate Pait's employment. Section V, Article 1 of the department standards of conduct, which were introduced into evidence at the termination hearing, provides that a member may be dismissed "[f]or misconduct on the part of a member, on or off duty, which tends to degrade the member of the department." Similarly, the city's personnel ordinance, which also was introduced at the hearing, provides that the reasons for "dismissal [of an employee] include but are not limited to . . . [m]isconduct."

Because the term "misconduct" is not defined in the department standards or city ordinance, "we therefore look to its plain and ordinary meaning as defined by dictionaries." *Mornay v. Nat. Union Fire Ins. Co. of Pittsburgh*, 331 Ga. App. 112,

6

115 (3) (769 SE2d 807) (2015) (citation omitted). The term "misconduct" is defined as meaning "[b]ehavior not conforming to the prevailing standards or laws" and "[d]eliberate wrongdoing." American Heritage Dictionary of the English Language, Third Edition. Likewise, Black's Law Dictionary, Revised Fourth Edition, defines "misconduct" as meaning "unlawful behavior" and "improper or wrong behavior," and notes that "its synonyms are misdemeanor, misdeed, misbehavior[.]" Given the plain and ordinary meaning of "misconduct" as used in the department standards and the city ordinance, it is apparent that theft is the type of unlawful and improper behavior that supports dismissal of an employee.

And contrary to the superior court's ruling, there was sufficient evidence to support the city manager's finding that Pait had admitted to having committed theft. As recounted above, evidence of Pait's guilty pleas to two counts of theft by taking was admitted at the hearing; and at that time, Pait was on probation for the offenses, having served less than two months of his 24-month probated sentence. While the superior court correctly found that the first offender pleas did not constitute convictions at the time of the termination hearing, see *Humphreys v. State*, 287 Ga. 63, 70 (4) (694 SE2d 316) (2010), they still constituted guilty pleas to the offenses of theft by taking that required successful completion of Pait's probated sentences.

7

"Unlike other probated sentences the [first offender] defendant is not merely serving his sentence outside the confines of prison, but is serving a period on probation to determine whether or not the prisoner may be rehabilitated." *State v. Wiley*, 233 Ga. 316, 318 (210 SE2d 790) (1974). First offender treatment "allows a defendant's slate to be wiped clean for the purposes of recordation of a criminal conviction and its effect on civil rights or liberties *after* a defendant successfully fulfills the first offender terms. It does not prohibit restrictions on a defendant's civil rights or liberties imposed during service of the first offender term." *Salomon v. Earp*, 190 Ga. App. 405, 407 (379 SE2d 217) (1989) (emphasis in original), overruled in part on other grounds in *Pender v. Witcher*, 196 Ga. App. 856 (397 SE2d 193) (1990). Thus, the city manager was authorized to find that, at the time of the hearing, Pait's guilty pleas, for which he was serving probated sentences, constituted admissions that he had committed the thefts.

In addition to the evidence of Pait's guilty pleas to theft, Pait himself admitted at the termination hearing that he had taken the items in question from the property of another. While he claimed that he had done so because he thought the property was abandoned, the city manager, as the factfinder and judge of witness credibility, was authorized to reject Pait's claim and conclude that he had in fact stolen the items. See

8

*Glass v. City of Atlanta*, 293 Ga. App. 11, 14 (1) (666 SE2d 406) (2008) (civil service board authorized to discount petitioner's evidence, to find the evidence against him more credible, and to affirm his termination). We note that the superior court, in its order reversing the city manager's decision, improperly took on the roles of factfinder and judge of witness credibility by reweighing the evidence and concluding as a matter of fact that Pait, based on his claim that he thought the property was abandoned, did not have specific intent to commit theft.

Because there was evidence supporting the city manager's finding that Pait had committed theft and that such misconduct warranted dismissal, "the superior court erred in [finding otherwise and] reversing the [city manager's] decision affirming the termination of [Pait's] employment." *DeKalb County*, supra at 555 (1) (a).

2. *Procedural due process.*

The superior court also erred in finding that the city manager's decision must be reversed because the fire department's termination notice deprived Pait of procedural due process. "Procedural due process generally requires some type of hearing and some type of notice before termination of employment. [Cit.]" *Board of Commrs. of Effingham County v. Farmer*, 228 Ga. App. 819, 821 (1) (493 SE2d 21) (1997). Here, the department's written notice expressly informed Pait that he was

9

being terminated for theft and that he had the right to appeal the termination decision to the city manager in writing within ten days. A hearing before the city manager was then held pursuant to the city's personnel ordinance. See *Goddard v. City of Albany*, 285 Ga. 882, 883 (1) (684 SE2d 635) (2009) (city's personnel ordinance provides that certain employees below the rank of department head have the right to a "pre-termination" hearing and sets forth a procedure to request such a hearing). Pait appeared at the hearing with counsel, who questioned the fire chief regarding Pait's termination for theft, presented evidence, and made arguments on Pait's behalf. Because Pait received notice that he was being terminated for theft and had an evidentiary hearing before the city manager whose finding of theft as the basis for termination was supported by sufficient evidence, we find no procedural due process violation. Compare *Sheppard v. DeKalb County Merit Council*, 144 Ga. App. 115, 115-116 (2) (240 SE2d 316) (1977) (due process violation where notice specified hair length violation as sole reason for dismissal, but completely different grounds of absences and tardiness were only reasons cited for dismissal after evidentiary hearing).

3. *Back pay and benefits.*

10

Given our holdings above that the city manager's termination decision was proper and should not have been reversed by the superior court, it follows that the superior court's order awarding Pait back pay and benefits must also be reversed.

3. *Attorney fees.*

The superior court awarded Pait a lump sum of $111,590 as attorney fees under OCGA §§ 9-15-14 (a) & (b). While the trial court's order lists numerous purportedly sanctionable actions by appellants throughout the course of this case, the order does not indicate how the court apportioned the award of fees based on the supposedly improper conduct. "When awarding attorney fees under OCGA § 9-15-14, the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. Thus, lump sum or unapportioned attorney fees awards are not permitted in Georgia." *Gibson Law Firm v. Miller Built Homes*, 327 Ga. App. 688, 691 (3) (761 SE2d 95) (2014) (citations and punctuation omitted). Here, "[t]he trial court's order fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the amount awarded was [$111,590] as opposed to any other amount." *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 243 (2) (d) (620 SE2d 463) (2005) (citation omitted). We therefore "vacate the [attorney fees] order in its entirety and direct the trial court,

11

on remand, to reconsider all issues relating to that award, including whether the [appellants] engaged in sanctionable conduct . . . and for appropriate factfinding with regard to the amount of attorney fees, if any, to be assessed." *Gibson Law Firm*, supra (citation omitted).

*Case No. A15A1181*

5. *Summary judgment.*

Pait claims that the trial court erred in granting summary judgment to the city, Arrowood and Carswell on all his state law claims such as slander, defamation, intentional infliction of emotional distress and negligent retention. But the only factual basis he asserts in his brief for any of the claims is that Arrowood and Carswell made defamatory statements about him. While the statement of facts section of his brief recites various statements allegedly made by the parties and others, Pait has failed to specify which, if any, of these statements were supposedly defamatory. Moreover, he has completely failed to demonstrate by the record which evidence creates any genuine issue of material fact as to the necessary elements for each of his claims.

> Our Rule 25 (c) (2) (i) requires that each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the [c]ourt will not search for or consider

12

such enumeration. It is not the function of this [c]ourt to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record.

*Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009) (citations, punctuation and emphasis omitted). Because Pait has failed to carry his burden of showing error in record, we find no basis for reversal.

*Judgment reversed, vacated in part and remanded with direction in Case No. A15A1180. Judgment affirmed in Case No. A15A1181. Ellington, P. J., and Dillard, J., concur.*