**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules**

**July 14, 2016**

# In the Court of Appeals of Georgia

A16A0585, A16A0861. TRUSTGARD INS. CO. v. HERNDON et al.

McMILLIAN, Judge.

On April 11, 2013, Charles Herndon shot Vivian Welker on his property. Welker sustained approximately $55,000 in medical expenses, which she attempted to collect under a homeowner's policy ("the Policy") that Trustgard Insurance Company ("Trustgard") had issued to Herndon. After Trustgard denied coverage under several Policy provisions excluding coverage for intentional acts and for criminal acts, the company filed this action seeking a declaration that it had no liability under the Policy in connection with the shooting. The parties filed cross-motions for summary judgment, and the trial court granted Herndon's two motions for summary judgment and denied Trustgard's motion. These appeals followed.

In Case No. A16A0585, Trustgard argues that the trial court erred in denying it summary judgment under the Policy provisions excluding coverage for intentional and criminal acts and further asserts that the trial court erred in granting summary judgment to Herndon on the intentional acts exclusions. In Case No. A16A0861, Trustgard appeals the trial court's grant of summary judgment to Herndon on the provision excluding coverage for criminal acts. For the reasons that follow, we reverse the trial court's orders.

In reviewing the trial court's ruling on summary judgment, "we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences." (Citation and punctuation omitted.) *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (3) (779 SE2d 334) (2015). Moreover, we review the grant or denial of a motion for summary judgment de novo. Id.

Here, however, the facts are largely undisputed. The record shows that at the time of the shooting, Herndon, who was married, was engaged in an intimate relationship with Welker, whom he met in 2012. In addition to their romantic relationship, Welker helped Herndon with repairs to his rental properties, and Herndon paid her for this work. Welker had been to Herndon's house on several

2

occasions when his wife was out of town, and she would sometimes go there to pick up money that Herndon would leave in the mailbox for her. On April 11, 2013, Welker called Herndon and asked him to leave her $30 in the mailbox. Welker asked her friend Mark to drive her to Herndon's house to pick up the money, but when she arrived, she discovered that Herndon had left only $16. Welker and Mark drove away, but Welker called Herndon to tell him she was coming back for the rest of the money. He replied, "Okay." When they returned, however, Welker discovered that Herndon had not put any more money in the mailbox, and he did not come outside when they arrived. Because Welker knew that Herndon's wife was home, she asked Mark to go to the door to get the money.

After Mark approached the door, Herndon, who did not know Mark and who appeared to have been drinking, came out of the house carrying a gun. Herndon approached Welker, who was sitting in the passenger seat of Mark's truck, and started asking questions about Mark. As Welker and Herndon spoke, Herndon placed the gun on Welker's leg. Although Welker did not believe Herndon meant to hurt her, the gun fired, and the bullet struck Welker in the knee. Welker testified that Herndon said, "I done messed up," and Mark sped away to a nearby hospital, where he left Welker. When the police later questioned Welker about the shooting, she told them that

3

Herndon did it, but she believed it had been an accident. Herndon also asserted in his affidavit in support of his motion for summary judgment that the shooting was accidental, stating that he was "very surprised" when the gun discharged.

Herndon was charged with aggravated assault and aggravated battery in connection with the shooting. He eventually pled guilty to the lesser charge of misdemeanor reckless conduct under OCGA § 16-5-60 (b)[1] and was sentenced to probation as a first offender.

At some point, Welker submitted a claim to Trustgard to recover her medical expenses resulting from the shooting. Trustgard denied coverage under three exclusions from personal liability protection expressly set forth in the Policy. The pertinent sections of the Policy provide that Trustgard's coverage for personal liability and for medical payments to others does not include:

6. **Bodily injury** . . . caused by the willful, malicious, or intentional act of any person.

\* \* \* \*

---

[1] Herndon pled guilty to reckless conduct in connection with the charge of aggravated assault; the aggravated battery charge was nolle prossed.

4

8. **Bodily injury** . . . expected or intended by any **insured person**. This includes **bodily injury** . . . :

a. caused intentionally by or at the direction of an **insured person**; or

b. which results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

(collectively, the "Intentional Acts Exclusions").

\* \* \* \*

18. **Bodily injury** . . . arising from a criminal act or omission which is committed by . . . an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of a crime.

(the "Criminal Act Exclusion").

Herndon moved for summary judgment on the Intentional Acts Exclusions, and Trustgard moved for summary judgment under the Criminal Act Exclusion. On September 15, 2015, the trial court granted Herndon's motion, finding the record lacked evidence to support a finding that the shooting was intentional and thus the Intentional Acts Exclusions did not apply as a matter of law. The trial court also denied Trustgard's motion for summary judgment under the Criminal Act Exclusion,

finding that Trustgard had failed to present "any admissible evidence to support its contention that the shooting was a criminal act" (the "First Order").

Three days after the trial court entered this order, on September 18, 2015, Herndon filed a second motion for summary judgment, seeking judgment in his favor on the Criminal Act Exclusion. Subsequently, on October 9, 2015, Trustgard filed a timely notice of appeal of the First Order (Case No. A15A0585) and later opposed Herndon's second summary judgment motion on the ground that its appeal from the First Order divested the trial court of jurisdiction to consider Herndon's motion. Despite the pending appeal, the trial court considered Herndon's motion, excluded Trustgard's proffered evidence of Herndon's guilty plea, and found that the record lacked any other evidence to establish that the shooting was a criminal act. Accordingly, the trial court granted summary judgment to Herndon on the Criminal Act Exclusion as well (the "Second Order"), and Trustgard filed a notice of appeal from that order (Case No. A16A0861).

*Case No. A16A0585*

1. We first address Trustgard's argument that the trial court erred by denying its motion for summary judgment on the Criminal Act Exclusion. As noted above, the Criminal Act Exclusion excludes from coverage any bodily injury "arising from a

6

criminal act or omission which is committed by . . . an insured person," and it is undisputed that Herndon pled guilty to criminal charges in connection with the shooting that resulted in Welker's injuries.[2]

Nevertheless, the trial court held in the First Order that it could not consider evidence of Herndon's criminal history, finding that evidence that Herndon had been charged with a criminal offense was inadmissible and that because Herndon's plea was entered under Georgia's First Offender Act, OCGA § 42-8-60 et seq., no adjudication of his guilt had occurred. Although the trial court is correct that evidence of charges filed against Herndon, standing alone, would not be admissible,[3] we find

---

[2] We note that while Herndon objected to the admissibility of the sentencing documentation relating to this plea on hearsay grounds, he does not dispute the fact of his plea, asserting in his appellate brief that "there is no dispute that for the incident in question . . . [he] *entered* into first-offender probation." (Emphasis supplied.) Additionally, the sentencing documentation reflecting the crimes associated with that guilty plea is signed by the same trial judge presiding over this civil litigation and was entered in the same superior court.

[3] Our Supreme Court has held that a criminal charge, judgment of conviction, or an acquittal cannot be used as evidence "in a purely civil action, to establish the truth of the facts on which it was rendered." (Citation and punctuation omitted.) *Pierce v. Pierce*, 241 Ga. 96, 100 (3) (243 SE2d 46) (1978) (excluding evidence that child abuse charges had been dismissed against the husband in a divorce case). However, because this case involves a guilty plea and not merely charges or a conviction or acquittal arising out of contested charges, *Pierce* and its progeny are not implicated.

7

that evidence of Herndon's guilty plea to reckless conduct is admissible even though he was sentenced under the First Offender Act.

First offender pleas, although they do not necessarily constitute convictions, are considered guilty pleas to the underlying offenses. *City of Albany v. Pait*, 335 Ga. App. 215, 218-19 (1) (780 SE2d 103) (2015). And in *Pait*, this Court held that a party's guilty plea, for which the party was serving a probated sentence as a first offender, constituted an admission that he committed the underlying crime of theft, which could be considered by the trial court. Id. at 219.[4] In Georgia, a guilty plea is "an admission against interest and prima facie evidence of the facts admitted."

---

[4] Moreover, although

> [f]irst offender treatment allows a defendant's slate to be wiped clean for the purposes of recordation of a criminal conviction and its effect on civil rights or liberties *after* a defendant successfully fulfills the first offender terms[, i]t does not prohibit restrictions on a defendant's civil rights or liberties imposed during service of the first offender term.

(Citation omitted; emphasis in original.) *Pait*, 335 Ga. App. at 219 (1). Here, Herndon was charged with aggravated assault and aggravated battery in connection with the incident in this case , and on January 6, 2014, he entered a guilty plea to the lesser included offense of reckless conduct, along with several counts of obstruction arising out of separate charges. The trial court sentenced Herndon as a first offender to a total of 15 years to be served on probation, a sentence that Herndon is still serving.

(Citation and punctuation omitted.) *Hasty v. Spruill*, 207 Ga. App. 485, 486 (428 SE2d 420) (1993). See, e.g., *Manning v. Manning*, 270 Ga. 86, 87 (2) (508 SE2d 157) (1998) (copy of guilty plea husband entered to the prior aggravated assault constitutes prima facie evidence of his commission of that crime against his ex-wife in her tort claim against him for the assault); *Setliff v. Littleton*, 264 Ga. App. 711, 714 (2) (264 SE2d 180) (2003) ("a guilty plea [to a traffic violation] is an admission against interest and prima facie evidence of the facts admitted, [but] it is not conclusive of negligence and is only a circumstance to be considered with other evidence in a civil action for damages."); *Miller v. Crumbley*, 249 Ga. App. 403, 405 (2) (548 SE2d 657) (2001) (same).

Applying these well established principles, this Court considered evidence of an insured's entry of an *Alford* plea[5] of guilty to a charge of child molestation sufficient to establish a prima facie case that his insurer had no duty to provide coverage or a defense under the terms of a policy provision excluding coverage for intentional acts. *Harden v. State Farm Fire & Cas. Co.*, 269 Ga. App. 732, 734 (1) (605 SE2d 37) (2004). Moreover, we considered evidence of an insured's plea of guilty but mentally ill to one count of murder as prima facie evidence that the

---

[5] See *North Carolina v. Alford*, 400 U.S. 25 (91 SCt 160, 27 LE2d 162) (1970).

insured's actions fell within an exclusion to coverage for willful and malicious acts by the insured. *Merritt v. State Farm Fire & Cas. Co.*, 218 Ga. App. 652 (463 SE2d 42) (1995). See also *State Farm Fire & Cas. Co. v. Moss*, 212 Ga. App. 326, 327 (441 SE2d 809) (1994) (same for plea to aggravated assault). In this case, therefore, Herndon's guilty plea was admissible prima facie evidence that he committed a criminal act. See OCGA § 9-11-56 (c) (requiring that admissions be considered, along with other pleadings and evidence of record, in addressing motions for summary judgment).

In addition, "a guilty plea as to which a plaintiff in a civil case has been granted first offender treatment is admissible in evidence to disprove and contradict such party's testimony given in the civil case." *Hightower v. Gen. Motors Corp.*, 255 Ga. 349, 351 (338 SE2d 426) (1986) (upholding admission of plaintiff's guilty plea to arson charge to rebut testimony that plaintiff did not know men he hired to steal his car were also going to burn it). See also *Bentley v. B.M.W., Inc.*, 209 Ga. App. 526, 529 (3) (433 SE2d 719) (1993) (upholding admission of medical expert witness's prior first offender plea to impeach his testimony regarding the only flaw in his 50-year record was that his hospital privileges had been suspended on one occasion), overruled on other grounds, *Sheriff v. State*, 277 Ga. 182, 188 (2) (587 SE2d 27)

10

(2003).[6] Although *Hightower* involved contradicted testimony and Herndon has not expressly testified that he did not commit a crime, we see no reason why *Hightower* should not also apply when a civil party takes a litigation position contrary to what has been previously admitted. Here, Herndon asserts that the Criminal Act Exclusion does not apply when he has already admitted that he committed a crime by pleading to it. Accordingly, the trial court erred in excluding evidence of Herndon's plea.

The question, then, is after properly considering Herndon's guilty plea, whether summary judgment is appropriate. Because Herndon has failed to point us to any evidence rebutting the evidence of his guilty plea, we find that the trial court erred in denying Trustgard's motion for summary judgment under the Criminal Act Exclusion. In *Merritt*, this Court found that an insured failed to reasonably explain the difference between his plea of guilty but mentally ill to murder, which included an admission of malice aforethought, and his later testimony that he was insane and did not intend to shoot the victim or anyone else, noting that the insured did not contend "that there

---

[6] Compare *Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998) ("[F]irst offender record of one who is currently serving a first offender sentence or of one who has successfully completed the first offender sentence may not be used in a criminal case to impeach the first offender on general credibility grounds (i.e., by establishing that the first offender has been convicted of a felony or crime of moral turpitude) because no adjudication of guilt has been entered.").

11

was an infirmity in the plea proceedings or that he was incompetent at the time the plea was entered" nor was there evidence that he ever sought to withdraw the plea. 218 Ga. App. at 654. See also *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986). We concluded, therefore, that the trial court properly granted the insurer's motion for summary judgment on its claim seeking a declaration that it had no obligation to provide coverage to the insured under the policy, which excluded coverage for "malicious" as well as intentional acts. *Merritt*, 218 Ga. App. at 653.

Further in *Moss*, this Court found that the insured "utterly failed to explain the contradiction between his prior admission against interest in the form of a guilty plea for aggravated assault and his subsequent deposition and affidavit stating that the shooting in question was merely an accident resulting from mere 'horseplaying.'" 212 Ga. App. at 327. We held that the trial court erred in denying the insurer's motion for summary judgment on the ground that the policy did not provide coverage for the incident, which was excluded from coverage under a "willful and malicious acts" exclusion. Id.

Therefore, neither Herndon's affidavit claiming the shooting was an accident nor Welker's testimony that she believed the shooting was an accident is sufficient

12

to rebut the fact that Herndon admitted to criminal conduct in connection with that incident.[7] Herndon's affidavit does not even mention his guilty plea, and neither Welker nor he have argued, or pointed us to any evidence demonstrating, that the plea was somehow invalid. Moreover, Herndon has failed to explain how he can take the position that the Criminal Act Exclusion does not apply to the facts of this case when he previously pled guilty to a crime in conjunction with the incident. Accordingly, we reverse the trial court's order denying summary judgment to Trustgard under the Criminal Act Exclusion.

2. Given this holding, we need not address Trustgard's argument that it was also entitled to summary judgment under the Intentional Acts Exclusions.

*Case No. A16A0861*

3. In its companion appeal, Trustgard contests the Second Order granting Herndon summary judgment under the Criminal Act Exclusion. Based on our holding in Division 1 above, the trial court's grant of summary judgment to Herndon under the Criminal Act Exclusion also must be reversed, and we need not address Trustgard's additional arguments.

---

[7] We note that the Criminal Act Exclusion does not distinguish between crimes based on mens rea, and it is undisputed that reckless conduct is a crime as defined by OCGA § 16-5-60 (b) even though it may not involve an intentional act.

13

Accordingly, we remand this case to the trial court with direction that it vacate the order granting summary judgment to Herndon on the Criminal Act Exclusion and instead enter summary judgment in favor of Trustgard.

*Judgments reversed and cases remanded with direction. McFadden, J., concurs. Miller, P. J., concurs in judgment only.*