**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

September 17, 2024

# In the Court of Appeals of Georgia

A24A0938. MIMS et al. v. EXCLUSIVE ASSOCIATION
   MANAGEMENT, INC.

BROWN, Judge.

Nicole and William Mims appeal the entry of summary judgment against them in a case filed by Nicole's former employer, Exclusive Association Management ("Exclusive"), alleging conversion and civil theft of management fees and rental proceeds. For the reasons set forth below, we affirm in part and reverse in part.

"[S]ummary adjudication is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Shields v. RDM, LLC*, 355 Ga. App. 409, 412 (1) (844 SE2d 297) (2020). "We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn

from it, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Guise v. Leoni*, 366 Ga. App. 659 (883 SE2d 892) (2023). "Furthermore, the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact." (Citations and punctuation omitted.) *Shields*, 355 Ga. App. at 413 (1).

Viewed de novo, the record shows that on September 24, 2020, Exclusive sued the Mimses for conversion, punitive damages, and attorney fees, alleging that over a three-year period, the Mimses stole $182,626.08 from Exclusive. According to the unverified complaint, Exclusive manages rental homes for over 976 clients and Nicole Mims worked for Exclusive as its rental account manager. It alleges that beginning in September 2016, Nicole began transferring client-paid management fees to her personal bank account and a joint bank account she held with her husband, William, and altering rental checks or money orders to be made payable to William and then depositing those checks or money orders into the joint bank account. Nicole then allegedly designated the rental accounts as unpaid, and, often, the affected renters would be evicted for missing payments. According to the complaint, William was aware of Nicole's actions and benefitted from them. Exclusive discovered the scheme

2

on October 8, 2018, at which point it reimbursed the converted rental payments to its clients and confronted the Mimses, who refused to return the stolen monies. Exclusive subsequently filed this action. The Mimses filed a verified answer denying much of the allegations and filed a counterclaim for libel and slander.

In the meantime, criminal charges were brought against Nicole, and in September 2021, the trial court granted the parties' consent motion to stay the civil proceedings until the conclusion of Nicole's criminal proceedings. On September 27, 2022, Nicole entered a negotiated guilty plea in the United States District Court to wire fraud, and was sentenced to 18 months in prison and ordered to pay $210,432.58 in restitution to Exclusive ($110,432.58) and Kazlow Fields ($100,000.00).[1] During the subsequent sentencing hearing, Exclusive's owner provided victim impact testimony explaining to the district court that Nicole stole rental payments from customers and "moved [them] to [her] personal account," and failed to pay vendors, resulting in outstanding unpaid bills and loss of business. The owner further stated that Nicole

---

[1] The record in this case does not contain the federal indictment or a transcript of the plea hearing. During the sentencing hearing, Nicole's criminal defense attorney stated that the $100,000 restitution amount appears to be related to an insurance payment made to Exclusive's owner and Kazlow Fields is the company collecting on the money for the insurance company.

stole money 91 times and that "money went from [Exclusive's] business account to [Nicole's] personal account 91 times." With the stolen money, Nicole purchased $500 baseball bats for her children, prom dresses, designer clothes, jewelry, vehicles, jet skis, family vacations to the beach and New York City, manicures and spray tans, numerous fast-food restaurant meals, $450 during one visit to Krispy Kreme, and veneers for herself.

Following the guilty plea and sentencing hearing, Exclusive moved for summary judgment, arguing that by entering her guilty plea, Nicole admitted to using the stolen money for her and her husband's benefit, and attaching documents from the district court plea deal in support.[2] In an affidavit filed in response to the motion for summary judgment, William averred that he never stole any money from Exclusive; that he was not a party to his wife's crimes; and that he never converted any funds from Exclusive. The trial court granted Exclusive's motion for summary judgment and entered judgment against the Mimses in the amount of $210,432.58, concluding that Nicole

---

[2] In Georgia, a guilty plea to a criminal charge is admissible in a civil action because in Georgia, "a guilty plea is an admission against interest and prima facie evidence of the facts admitted." (Citation and punctuation omitted.) *Trustgard Ins. Co. v. Herndon*, 338 Ga. App. 347, 351 (1) (790 SE2d 115) (2016) (physical precedent only).

had stolen $210,432.58 and used those funds for the benefit of the Mims family, including multiple vacations, jet skis, a prom dress, baseball equipment, and Krispy Kreme. This appeal followed.

1. The Mimses contend that the trial court erred in granting summary judgment against William because there is no evidence that he converted any funds belonging to Exclusive. Exclusive contends that the trial court's ruling was correct because Nicole's criminal defense attorney asserted during the sentencing hearing that the money "was used to support [Nicole's] family[,]" and the evidence shows that William enjoyed family vacations and jet skis all paid for by Exclusive's stolen money converted by his wife, and that William is liable for conversion even if he was unaware that the money was stolen.

Pursuant to OCGA § 51-10-1, "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." "This statute embodies the common law action of trover and conversion." *Grant v. Newsome*, 201 Ga. App. 710 (1) (411 SE2d 796) (1991).

> As the Supreme Court of Georgia has explained: Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his

5

rights; or an unauthorized appropriation. In order to be chargeable with conversion, technically it is not necessary that the defendant assert any right of ownership over the property; it is sufficient if the defendant wrongfully assumes dominion over the property inconsistent with the owner's right. It is immaterial that such dominion was exercised in good faith, for whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith.

(Citation and punctuation omitted.) *Levenson v. Word*, 294 Ga. App. 104, 106 (1) (668 SE2d 763) (2008). An action for conversion applies to "specific money" as well as personal property.[3] See *Grant*, 201 Ga. App. at 710 (1). However, "[w]here there is no evidence that the defendant possesses any of the funds or items allegedly converted, an action for conversion must fail." *J. Kinson Cook of Ga. v. Heery/Mitchell*, 284 Ga. App. 552, 558 (c) (644 SE2d 440) (2007).

In this case, there is no evidence that William possessed any of the funds stolen from Exclusive or that the funds went into the Mimses' joint bank account. The complaint alleges that William was aware of his wife's actions and benefitted from them, but unverified allegations in a complaint are not evidence for purposes of

---

[3] The Mimses do not assert that the transfers at issue here did not involve "specific money."

6

summary judgment. See *Jones v. City of Willacoochee*, 299 Ga. App. 741, 742 (683 SE2d 683) (2009). Moreover, while Nicole's guilty plea to wire fraud is admissible in a civil action in Georgia and is prima facie evidence of the facts admitted, see *Trustgard Ins. Co. v. Herndon*, 338 Ga. App. 347, 351 (1) (790 SE2d 115) (2016) (physical precedent only), there is no evidence in the record of the factual basis upon which the guilty plea was based. Neither the documents from the district court filed in support of Exclusive's motion for summary judgment nor Exclusive's owner's victim impact testimony reflect any factual basis for Nicole's guilty plea. Exclusive's owner's statement merely confirms that the stolen money was moved to Nicole's personal account and does nothing to implicate William in his wife's acts of wire fraud. And, defense counsel's statement during the sentencing hearing that the money was used to support Nicole's family is not evidence of William's possession, knowledge, or involvement. Accordingly, the trial court erred in granting summary judgment against William.[4] See, e.g., *Guise*, 366 Ga. App. at 667 (d). Cf. *Levenson*, 294 Ga. App. at 108 (1) (trial court did not err in granting summary judgment to defendant on conversion claim where plaintiff failed to prove the essential elements of the tort); *Williams v.*

---

[4] We note that William has not moved for summary judgment in his favor.

*Citizens Bank of Ashburn*, 182 Ga. App. 461, 462-463 (356 SE2d 80) (1987) (trial court did not err in granting summary judgment to third-party defendant bank on claim for conversion where bank was not "chargeable with the knowledge of its agent," who allegedly converted money, property, and various bank instruments belonging to testator).

2. The Mimses contend that the trial court erred in awarding Exclusive an impermissible double recovery where Exclusive's own evidence shows that it previously recovered $100,000 from insurance.[5] Exclusive does not dispute the $100,000 insurance payment and contends that under the collateral source rule, it is within the trial court's discretion to decide not to reduce an award of damages by an amount paid by insurance.

"[C]onversion is a suit for money damages for [the] property converted." *Taylor*, 250 Ga. App. at 358 (2). Moreover, as this Court has held, "[a] conversion is an intentional tort and will support an award of attorney fees and an award of punitive damages." *Felker v. Chipley*, 246 Ga. App. 296, 298 (2) (540 SE2d 285) (2000). In a suit for conversion,

---

[5] In this case, Exclusive sought to recover the amount of money converted by Nicole, which she agreed during the sentencing hearing was $210,432.58.

the plaintiff may elect a verdict for the return of the property, payment of the property value, or money damages. Where the plaintiff chooses a money verdict, he may recover either the value of the property on the date of conversion, plus interest from that date, or he may recover the value of the property on the date of conversion, plus a reasonable rate of hire from that date if the property is of a character that hire may be recovered. In a case such as the instant one, where the property converted is money, the plaintiff must, of course, seek a money verdict. And while money can earn interest, it is not personalty of a character for which hire may be recovered. Thus, a plaintiff suing for the conversion of money may recover the amount of money converted, plus interest from the date of conversion.

Id. at 296-297 (1). See OCGA § 44-12-151 (election of verdict in action to recover personal property). In this case, Exclusive seeks to recover the amount of money converted by Nicole, which she agreed during the sentencing hearing was $210,432.58, and the trial court's order provided that Exclusive was entitled to judgment against the Mimses in that amount.

As we explained in *Candler Hosp. v. Dent*, 228 Ga. App. 421 (491 SE2d 868) (1997),

[t]he common law rule in Georgia bars the defendant from presenting any evidence as to payments of medical, hospital, disability income, or other expenses of a tortious injury paid for by a plaintiff, governmental

9

entity, or third party and taking credit towards the defendant's liability in damages for such payments, because a tortfeasor is not allowed to benefit by its wrongful conduct or mitigate its liability by collateral sources provided by others. The common law rule made no exceptions for the introduction of evidence as to a collateral source, which rule remains applicable today. The General Assembly sought to modify the common law rule [and enacted OCGA § 51-12-1 (b) in 1987], not to prevent recovery for all tort damages, but to inform the jury that the plaintiff had already received such economic benefits for whatever purpose that the jury sought to use such information, i.e., "poison the jury's minds." The Supreme Court of Georgia struck [down] OCGA § 51-12-1 (b) as unconstitutional.

(Citations and punctuation omitted.) Id. at 422, citing *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991), overruled on other grounds, *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992). The collateral source rule bars a defendant from offering evidence that a plaintiff has received payment or reimbursement from a third party — such as an insurer — for damage or loss caused by the defendant's conduct. See *Wardlaw v. Ivey*, 297 Ga. App. 240, 244-245 (676 SE2d 858) (2009) ("[s]imply put, the defendants cannot reduce their liability based on payments made by [plaintiff's] insurer"). See also *Hoeflick v. Bradley*, 282 Ga. App. 123, 124 (1) (637 SE2d 832) (2006); *Thompson v. Milam*, 115 Ga. App. 396, 397 (154 SE2d 721) (1967)

("[a] tortfeasor can not diminish the amount of his liability by pleading payments made to the plaintiff under the terms of a contract between the plaintiff and a third party who was not a joint tortfeasor"). "This is because a [defendant] is not allowed to benefit by its wrongful conduct or to mitigate its liability by collateral sources provided by others. Generally, therefore, a [plaintiff] may sue a [defendant] and seek recovery for damages caused by tortious conduct, even if the [plaintiff] has been reimbursed by [its] insurer." (Citation and punctuation omitted.) *Wardlaw*, 297 Ga. App. at 244. See also *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 409 (2) (434 SE2d 450) (1993), citing *Peoples Bank of LaGrange v. Ga. Bank & Trust Co.*, 126 Ga. App. 768, 772 (1) (191 SE2d 876) (1972) (while collateral source rule does not apply to breach of contract, it does apply to conversion; thus, in *Peoples Bank of LaGrange*, the Court of Appeals correctly reversed trial court's grant of summary judgment to plaintiff on defendant's counterclaim for conversion because "the collateral source rule was applicable to the defendant's counterclaim in tort and . . . the plaintiff was, therefore, barred from defensive reliance upon the collateral source evidence" to secure summary judgment) (emphasis omitted).

As in *Wardlaw*, the Mimses argue that Exclusive should not benefit from a double recovery. But, as we explained in that case, the insurance payment was not made on behalf of the Mimses by their insurance company; rather, the insurance payment was made by Exclusive's insurance company. See *Wardlaw*, 297 Ga. App. at 244-245. Accordingly, the judgment in this case in the amount of $210,432.58 for the losses sustained by Exclusive as a result of Nicole's tortious conduct does not result in a double recovery. See id. Cf. *Candler Hosp.*, 228 Ga. App. at 423 ("[t]hus, plaintiff can recover from the jury all special damages provable, but cannot receive in judgment again what has already been *paid by the defendant or on the defendant's behalf* by an insurer") (emphasis supplied); *MCG Health v. Kight*, 325 Ga. App. 349, 353 (1) (750 SE2d 813) (2013) ("[t]o prevent a double recovery, [plaintiff] was not entitled to recover in judgment against the tortfeasor what has already been paid on the tortfeasor's behalf by an insurer").[6]

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Padgett, J., concur.*

---

[6] Although we conclude that the collateral source rule applies to the insurance proceeds collected by Exclusive from its own insurance company, we make no ruling as to whether it applies to any payment of restitution pursuant to the district court's restitution order.